UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JAMAL DAMON HENDRIX,<br><br>            Plaintiff,<br><br>v.<br><br>STATE OF NEVADA, et al.,<br><br>            Defendants. | Case No. 3:15-cv-00155-MMD-WGC<br><br>**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' Partial Motion for Summary Judgment. (ECF No. 33; exhibits at ECF Nos. 33-1 to 33-8; joinders at ECF Nos. 49, 58, 62.) Plaintiff did not file a response.

After a thorough review, it is recommended that the motion be denied.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Pl.'s Am. Compl., ECF No. 13.) The events giving rise to this action took place while Plaintiff was housed at Ely State Prison (ESP). (*Id*.) Defendants are: Dr. Romeo Aranas, Jayson Artinger, Renee Baker, Harold Bryne, Jesse Cox, Vance Crowder, Michael Fletcher, Sheryl Foster, Angela Gregerson, Robert Huston, Dawn Jones, Timothy Jones, Steven Kimbrell, Dr. Michael Koehn, Keli Lyons, Jeanette Ornelas,  Curtis Rigney, Isaac Winsor, Dean Pinkham, Darlene Varady, and Brian Williams. (ECF Nos. 17, 28, 31, 45, 47, 56, 60, 63.) Doris Parenteau (erroneously sued as D. Bradford) and Leah Bothe were dismissed without prejudice as they were not timely served. (ECF No. 56.) Dean Pinkham was served on November 18, 2016 (ECF No. 45); however, the Attorney

General's Office has not filed a notice of acceptance of service on his behalf, and Pinkham has not filed an answer or other responsive pleading. Within **ten days** of the date of this Report and Recommendation, the Attorney General's Office shall advise the court whether it is accepting service on behalf of Pinkham.

On screening, Plaintiff was allowed to proceed with various claims in Counts I-V and VII-XI of the amended complaint. (*See* ECF No. 17.)

Defendants move for partial summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies with respect to the free exercise and RLUIPA claims in Count II, as well as all of Counts V and VIII. (ECF No. 33.)

## II. LEGAL STANDARD

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007), *cert. denied*, 135 S.Ct. 403 (Oct. 20, 2014)). Unless the failure to exhaust is clear from the face of the complaint, the defense must be raised in a motion for summary judgment. *See id*. (*overruling in part Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) which stated that failure to exhaust should be raised in an "unenumerated Rule 12(b) motion").

As such: "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts [in a preliminary proceeding]." *Id*., 1168, 1170-71 (citations omitted). "Exhaustion should be decided, if feasible, before reaching the merits of a

prisoner's claim. If discovery is appropriate, the district court may in its discretion limit discovery to evidence concerning exhaustion, leaving until later—if it becomes necessary—discovery related to the merits of the suit." *Id*. at 1170 (citing *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)). If there are disputed factual questions, they "should be decided at the very beginning of the litigation." *Id*. at 1171.

Once a defendant shows that the plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)); *Draper v. Rosario,* 836 F.3d 1072, 1080 (9th Cir. 2016) (inmate plaintiff did not meet his burden when he failed to identify any actions prison staff took that impeded his ability to exhaust his administrative remedies, or otherwise explain why he failed to comply with the administrative remedies process). The ultimate burden of proof, however, remains with the defendant. *Id*.

The Supreme Court has clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id*. (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus, "[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process. *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). That being said, an inmate exhausts available administrative remedies "under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." Reyes, 810 F.3d at 658.

To reiterate, an inmate need only exhaust "available" administrative remedies. *See Ross v. Blake*, 136 S.Ct.1850, 1858 (2016). "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain "some relief for the action complained of.'" *Id*. at 1859 (quoting *Booth*, 532 U.S. at 738).

If the court concludes that administrative remedies have not been properly exhausted, the unexhausted claim(s) should be dismissed without prejudice. *Wyatt*, 315 F.3d at 1120, *overruled on other grounds by Albino*, 747 F.3d 1162.

"If the district judge holds that the prisoner has exhausted available administrative remedies, that administrative remedies are not available, or that a prisoner's failure to exhaust available remedies should be excused, the case may proceed to the merits." *Albino*, 747 F.3d at 1171.

### III. DISCUSSION

NDOC's Administrative Regulation (AR) sets forth the grievance procedures in Nevada's prisons. (ECF No. 33-1.) An inmate must try to informally resolve the dispute and then proceed through the informal, first and second levels of the grievance process before a claim will be considered exhausted. (*Id*.)

**A. Free Exercise and RLUIPA Claims in Count II**

Insofar as these claims are concerned, Plaintiff alleges that he noticed that his kosher food tray he received before going to the recreation yard had been thrown in the toilet by Ornelas and Kimbrell. (ECF No. 13 at 19.) He requested a second kosher food tray from Artinger and when it arrived, Artinger told Plaintiff over the intercom to look out his cell window, which he did, and saw Artinger put his hands down in his genital area, remove the contents of the kosher tray, and then place them back on the tray. (*Id*. at 19-20.) Artinger then ordered Kimbrell to bring Plaintiff the food tray. (*Id*. at 20.) Plaintiff notified Timothy Jones, the area sergeant, and asked for another kosher food tray which was denied by Jones "because you're a raghead Muslim and I hate you pieces of shits." (*Id*.) He left his food slot open to get the attention of the area lieutenant and asked to speak to Robert Huston. (*Id.*) He informed Huston that his fasting for the holy month had been interrupted by Jones, Kimbrell, Artinger, and Ornelas. (*Id.*) Huston

closed Plaintiff's food slot and told Plaintiff: "Fuck your religious holy month, you ain't getting no kosher tray from me." (*Id*.) When Huston left the unit, he told Artinger not to feed Plaintiff anything. (*Id*. at 21.)

On screening, the court determined that Plaintiff stated colorable claims under the First Amendment's Free Exercise Clause and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) based on these allegations. (ECF No. 17 at 10-11.)

At the informal level of grievance 2006-29-75953, Plaintiff asserted that on March 8, 2014, he was "*denied [his] religious common fare lunch tray* by various NDOC prison officials here at [ESP]," including Artinger, Kimbrell, Jones and Huston. (ECF No. 33-3 at 7-9, emphasis added.) When he asked for his food tray they stated that he would get it when he stopped writing inmate grievances on correctional staff. (*Id*.) He stated that this form of retaliation was prohibited. In response he was advised that this was the same day "CERT" was called to manage his disruptive behavior in the recreation area, and indicates that he did not provide evidence of his allegations of not receiving his food. (ECF No. 33-3 at 6.) Plaintiff proceeded to the first level, again stating he was refused his meal by the officers. (*Id*. at 5.) The first level grievance was denied, stating he had not provided evidence that the officers refused his meal. (*Id*. at 4.) Plaintiff then filed a second level grievance. (*Id*. at 2.) The second level grievance was denied, stating that the allegations that custody staff denied his common fare meal were unfounded, and that instead he refused his meal. (*Id*. at 3.)

Defendants argue: "Nowhere in these grievances does Plaintiff allege that he received a common fare meal for lunch before his recreation yard time and that his lunch had been thrown in the toilet by Ornelas and Kimbrell during a cell search." (ECF No. 33 at 5:8-10.) They contend that the allegations of the amended complaint are "substantially" different than the grievance; therefore, he did not exhaust his administrative remedies with respect to his free exercise and RLUIPA claims. (*Id*. at 5.)

A grievance is sufficient "if it alerts the prison to the nature of the wrong for which redress is sought." *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (quoting *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009)). The grievance "need not include legal

terminology or legal theories" as its "primary purpose ... is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." *Griffin*, 557 F.3d at 1120.

While Plaintiff does not include the specific details about the timing of receipt of the meal and it being thrown in the toilet, Plaintiff sufficiently put prison officials on notice that correctional officers had denied him his religious common fare meal. Therefore, it is recommended that Defendants' motion be denied with respect to the free exercise and RLUIPA claims in Count II.

**B. Count V**

In Count V, Plaintiff alleges that on April 6, 2014, Jesse Cox destroyed an amended civil rights complaint which was headed to federal court in retaliation for Plaintiff filing an earlier grievance against Cox, and stated: "Now, file a grievance on that." (ECF No. 13 at 32.) The federal district court denied the amended complaint as untimely. (*Id*.) Plaintiff was allowed to proceed on screening with retaliation and access to courts claims against Cox. (ECF No. 17 at 15.)

In grievance 2006-29-77572, Plaintiff states that on April 6, 2014, Correctional Officer Pickering returned his legal envelope back to him which was going to the U.S. Marshal's Office to serve the defendants in a civil rights matter because Correctional Officer Cox said that Plaintiff had to give him his [pink] copy along with it. (ECF No. 33-4 at 7-8.) Plaintiff told Cox to return the legal envelope so he could place postage stamps on it and so it could go out via postal service instead of via brass slip because correctional officers had already lost his legal envelope. (*Id*. at 8.) Plaintiff told Cox several times to send back his legal envelope so he could put stamps on it and get it to the Marshal's Office. Cox responded on the speaker: "you won't be getting this one out to them either, so good night." (*Id*.) He said this hindered his access to the courts and getting the envelope to the Marshal's Office because he feared it would be tampered with in retaliation for filing grievances. (*Id*. at 9.) In response, Plaintiff was advised that he did not provide any evidence of his allegations of interference with his legal mail. (*Id*. at 6.)

/ / /

He filed a first level grievance stating that Pickering conspired with Cox for his complaint to not reach the U.S. Marshal's Office because it had not been returned to him. (*Id*. at 5.) In response he was told that NDOC and ESP are not responsible for mail lost by the U.S. Post Office, and brass slips can be tracked so mail should be sent via brass slip. (*Id*. at 4.)

He proceeded with filing a second level grievance, stating that he had been retaliated against. (*Id*. at 2.) In response, he was advised that he did not prove his mail had not reached its proper destination or that he mailed an envelope at all. (*Id*. at 3.)

In grievance 2006-29-77573, he stated that after Cox took his legal envelope which was being sent to the U.S. Marshal for service, he refused to issue the pink copy receipt from his brass slip sent with the legal envelope so he could show the judge he mailed it. (ECF No. 33-5 at 6-7.) He said Cox has done this several times. (*Id*. at 7.) In response he was told that there was no evidence that the legal mail did not make it to its destination. (*Id*. at 5.) Plaintiff filed a first level grievance disagreeing with the informal level response. (*Id*. at 4.) The response states that Cox cited the brass slip process in accordance with the operational procedure, and found Plaintiff's allegations unfounded. (*Id*. at 3.) He then filed a second level grievance stating that he still had not received his civil rights complaint back from the U.S. Marshal's Office or the brass slip. (*Id*. at 2.)

Defendants argue that nowhere in these grievances did Plaintiff allege that Cox destroyed his civil rights complaint in front of him or that Cox said: "Now file a grievance on that." (ECF No. 33 at 5.) Because of the difference in the allegations of the amended complaint and the grievance, Defendants contend Plaintiff did not exhaust his administrative remedies.

The court reiterates that the grievance need only put prison officials on notice of "nature of the wrong for which redress is sought." *Sapp*, 623 F.3d at 824. Plaintiff stated in his grievance that he asked Cox for the legal envelope back several times and Cox told him "you won't be getting this one out to them either, so good night." (*Id*.) Plaintiff said this hindered his access to the courts and getting the envelope to the Marshal's Office because he feared it would be tampered with in retaliation for filing grievances. Plaintiff also specifically stated he had been retaliated against in this instance, and that he had not received his envelope back from Cox. The

- 7 -

court finds that these grievances sufficiently put prison officials on notice of the retaliation and access to courts claims asserted in Count V.

Therefore, it is recommended that Defendants' motion be denied with respect to Count V.

**C. Count VIII**

Plaintiff alleges that on June 25, 2014, Baker, Fletcher, and Byrne ordered Dr. Koehn to have Plaintiff removed from the disciplinary housing unit and placed in the facility's infirmary unit in retaliation for a civil rights lawsuit filed against Fletcher. (ECF No. 13 at 41.) Rigney and Pinkham aggressively grabbed Plaintiff from his cell and walked him to the infirmary room on orders from Fletcher. (*Id*.) Fletcher was angry with Plaintiff for turning down a settlement offer in one of his lawsuits. (*Id*.) Plaintiff was told by Rigney and Pinkham he would like his new cell for "having Fletcher in court." (*Id*.) The cell was stained with feces and smelled of urine. (*Id*.) Rigney and Pinkham ordered him to lie on the floor of the cell on his stomach, and Plaintiff refused to do so; however, Rigney and Pinkham then slammed him to the floor and left him without clothing or property. (*Id*.) He filed grievances about the incident which were denied by Bothe, Baker and Foster. (*Id*. at 42-43.)

On screening, Plaintiff was allowed to proceed with a retaliation claim against Fletcher, Rigney and Pinkham. (ECF No. 17 at 20.) He was also allowed to proceed with an Eighth Amendment conditions of confinement claim against Rigney and Pinkham, and against Bothe, Baker and Foster on a supervisory liability basis. (*Id*.)

In the informal level of grievance 2006-29-83348, Plaintiff stated that on June 25, 2014, Dr. Koehn authorized officers to remove him from his housing unit and placed him in the infirmary for allegedly not taking seizure medication, but this was actually done in retaliation for a pending civil lawsuit against the State of Nevada. (ECF No. 33-6 at 8-9.) He asserts that Dr. Koehn was authorized to put him in the infirmary by Baker and Fletcher, who is a defendant in a pending lawsuit, as well as Byrne. (*Id*. at 9.) He also states that this happened just days prior to an inmate early mediation conference. (*Id*.) His grievance was denied, stating he was admitted to the infirmary for non-compliance with seizure medication. (*Id*. at 7.)

He filed a first level grievance, stating he was sent to the infirmary in retaliation for initiating a lawsuit against the State of Nevada. (*Id*. at 4.) The first level grievance was also denied stating that the was admitted for medication non-compliance. (Id. at 5.) His second level grievance also asserted that he was retaliated for filing grievances and a lawsuit, and it was denied. (Id. at 2-3.)

Defendants argue that in grievance 2006-29-83348, Plaintiff alleged that Dr. Koehn, as opposed to Baker, Fletcher and Byrne, transferred him to the infirmary in retaliation for a pending lawsuit, and that this grievance alleges secondary supervisory liability against Baker and Fletcher for authorizing the transfer (ECF No. 33 at 6.) They contend that it is substantially different from the allegations of the amended complaint and does not serve to exhaust administrative remedies. (*Id*.)

A grievance is sufficient "if it alerts the prison to the nature of the wrong for which redress is sought," *Sapp*, 623 F.3d at 824, and need not "provide personal notice to a particular official that he may be sued," *Jones*, 549 U.S. at 219. Grievance 2006-29-83348 sufficiently put prison officials on notice of Plaintiff's claim that he was put in the infirmary cell in retaliation for initiating a lawsuit/filing grievances. Defendants' motion should be denied insofar as the retaliation claim in Count VIII is concerned.

In grievance, 2006-29-84335, the second level grievance states that he was left in the infirmary in a feces-covered cell with no out of cell exercise, on a bed with no guard rails. (ECF No. 33-7 at 2, 4.)

Defendants acknowledge that grievance 2006-29-84335 claimed the infirmary cell was covered in feces, but argue that in the second level grievance Plaintiff accused Dr. Koehn and not Rigney and Pinkham for these alleged conditions. (ECF No. 33 at 7.)

Again, this grievance sufficiently put prison officials on notice of the conditions of his Plaintiff's infirmary cell. He was not required to correctly name each of the prison officials involved, as the purpose of the grievance is to alert prison officials to the problem to allow them to attempt a resolution, and not to put a particular prison official notice of potential future litigation.

Defendants' motion for summary judgment should be denied as to Count VIII.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **DENYING** Defendants' Partial Motion for Summary Judgment (ECF No. 33).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: March 23, 2017.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE