1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

7

**DISTRICT OF NEVADA**

8

JAMAL DAMON HENDRIX,                )        3:15-cv-00155-MMD-WGC

9

Plaintiff,                )        **REPORT & RECOMMENDATION**
                                                         **OF U.S. MAGISTRATE JUDGE**

10

vs.                                            )        Re: ECF No. 84

11

STATE OF NEVADA, *et al.*,            )

12

Defendants.                )

13

14        This Report and Recommendation is made to the Honorable Miranda M. Du, United States

15    District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §

16    636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

17        Before the court is Defendants' Partial Motion for Summary Judgment. (ECF Nos. 84, 84-1 to 84-

18    42, 85-1 to 85-9, 108 (errata attaching signed declaration pages). Plaintiff filed a response (ECF Nos.

19    94, 94-1 to 94-4, 97[1].) Defendants filed a reply. (ECF Nos. 112, 112-1, 114, 114-1.)

20        After a thorough review, it is recommended that Defendants' motion be granted in part and denied

21    in part.

22                                        **I. BACKGROUND**

23        Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC),

24    proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Am. Compl., ECF No. 13.) The events

25    giving rise to this action took place while Plaintiff was housed at Ely State Prison (ESP). (*Id.*)

26

27    [1]        ECF No. 97 is identical to the response to Defendants' motion Plaintiff filed at ECF No. 94-2 at 170-195, 94-3

28    at 1-24. The court initially rejected this filing because it appeared to be discovery responses not correlated with the actual
      opposing brief, but then granted Plaintiff's request for reconsideration, correlating the exhibits to the opposition. (*See* ECF
      No. 103.) Defendants have moved to strike Plaintiff's affidavits filed in support of his opposition, arguing they contain
      inadmissible hearsay. (ECF No. 111.) The court has concurrently issued an order denying the motion to strike.

Defendants are Dr. Romeo Aranas, Jayson Artinger, Renee Baker, Harold Byrne, Jesse Cox, Vance Crowder, Michael Fletcher, Sheryl Foster, Angela Gregersen[2], Robert Huston, Dawn Jones, Timothy Jones, Steven Kimbrell, Dr. Michael Koehn, Keli Lyons, Jeanette Ornelas, Dean Pinkham[3], Curtis Rigney, Darlene Varady, Brian Williams, and Isaac Winsor.[4]

On screening the Amended Complaint, Plaintiff was allowed to proceed with the following claims:

Count I

(a) A retaliation claim against Dr. Koehn and Lyons based on allegations that they denied Plaintiff medical care on February 5, 2014, because he filed grievances and "snitched" on correctional officers and staff; and

(b) An Eighth Amendment deliberate indifference to serious medical needs claim against Dr. Koehn and Lyons based on allegations they did nothing to treat his pain from injuries sustained prior to his arrival at ESP, resulting in prolonged pain; and, a supervisory liability claim against Dawn Jones and Dr. Aranas based on allegations that they denied his inmate requests regarding the denial of pain medication.

Count II

(a) A retaliation claim against Artinger, Kimbrell and Ornelas based on allegations that they were involved in tearing up his cell and throwing away his grievances and legal material because Plaintiff had filed grievances against them; and

---

[2]

At times the name is spelled "Gregersen," and at other times "Gregerson." For consistency, the court will spell it Gregersen, as it appears in Plaintiff's Amended Complaint.

[3]

Pinkham was served on November 18, 2016 (ECF No. 45), but the Attorney General's Office did not accept service on his behalf, and he has yet to file a responsive pleading. Plaintiff filed a motion for a subpoena on Pinkham, which the court denied, advising him that the proper procedure is to file a motion for default under Rule 55(a) (ECF No. 89), but Plaintiff has not done so.

[4]

Defendants D. Bradford (also known as Doris Brashford or Doris Parenteau) and Leah Bothe were dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m). (ECF No. 56.)

(b) First Amendment and Religious Land Use and Institutionalized Persons Act (RLUIPA) claims against Artinger, Timothy Jones, Kimbrell, Ornelas and Huston based on allegations that they denied Plaintiff his kosher meal tray.

## Count III

An Eighth Amendment conditions of confinement claim against Winsor based on allegations Plaintiff was denied adequate clothing and a towel for several months, including winter months, which impacted his ability to exercise outdoors as well as his health; and, supervisory liability claims against Baker and Williams because they allegedly denied his requests and grievances regarding the lack of clothing.

## Count IV

A retaliation claim against Fletcher based on allegations he directed Bradford to deny Plaintiff's grievances because of a lawsuit filed against Fletcher.

## Count V

Retaliation and access to courts claims against Cox based on allegations that Plaintiff had filed grievances against Cox, and Cox destroyed his amended civil rights complaint headed to federal court, telling Plaintiff: "Now, file a grievance on that."

## Count VII

(a) A retaliation claim against Cox because Cox allegedly refused to assist Plaintiff in getting his medication because Plaintiff had filed grievances against "his officers"; and

(b) An Eighth Amendment deliberate indifference to serious medical needs claim against Varady, Crowder, and Cox based on allegations that they failed to give him his pain and seizure medications and ignored his requests, and as a result he experienced extreme pain and suffered a seizure causing injury.

## Count VIII

(a) A retaliation claim against Fletcher, Rigney, and Pinkham based on allegations that Plaintiff had filed a lawsuit against Fletcher, and at Fletcher's directive, Rigney and Pinkham placed Plaintiff in a cell covered in feces and stated Plaintiff would like his new cell for "having Fletcher in court;"

(b) An Eighth Amendment conditions of confinement claim against Rigney and Pinkham based on allegations they placed Plaintiff in a cell covered in feces and urine and forced him to lie down on his stomach by slamming him into the floor, as well as a supervisory liability claim against Baker and Foster

because Plaintiff claims he filed a grievance about the unsanitary conditions and they denied him any remedy or relief.

Count IX

(a) An Eighth Amendment conditions of confinement claim against Dr. Koehn and Lyons because they allegedly deprived him of socks and underwear, placed him in a high bed without guardrails when they were aware he suffered from a seizure disorder, denied him out-of-cell exercise, and were aware his cell was covered in feces and urine; and similar claims against Baker, Fletcher, Byrne, Dawn Jones and Dr. Aranas because they were allegedly aware of the conditions of Plaintiff's cell (from visiting it or denying his grievances on the subject) and refused to do anything; and

(b) A retaliation claim against Fletcher and Baker based on allegations they told Plaintiff he would not have his cell cleaned or changed because he refused to settle his civil rights lawsuit;

Count X

An Eighth Amendment deliberate indifference claim against Gregersen based on allegations that on July 22, 2017, Gregersen was aware Plaintiff had been prescribed pain medication, but refused to give him the medication, resulting in his suffering in extreme pain for nine hours.

Count XI

An Eighth Amendment deliberate indifference claim against Gregersen based on allegations that on August 6, 2014, she denied Plaintiff his seizure medication during the night time medication pass which resulted in him having a seizure and suffering injuries.

(Screening Order, ECF No. 34.)

Defendants have filed a Partial Motion for Summary Judgment. They argue that they are entitled to summary judgment with respect to all claims except: the retaliation claim against Fletcher in Count VI; the retaliation claim in Count VIII against Fletcher, Rigney and Pinkham; and, the Eighth Amendment conditions of confinement claim in Count VIII against Rigney and Pinkham.

/ / /

/ / /

/ / /

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250.

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B).

If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward

with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of material fact, the opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. Id. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

That being said,

[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

/ / /

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249-50 (citations omitted).

## III. DISCUSSION

### A. Motion for Stay

Embedded near the end some 400 pages of documents filed by Plaintiff in response to Defendants' motion is a motion to stay pursuant to Federal Rule of Civil Procedure 56(f) (now 56(d)), "so that the plaintiff can be given proper discovery from Defendants, to oppose summary judgment motion." (ECF No. 94-2 at 163-166.) This document was also filed as a separate motion (ECF No. 95), which the court denied at a hearing on August 17, 2017. (ECF No. 110.)

So the record is clear, the court will once again address the request and set forth the reasons the request should be denied insofar as it was embedded with Plaintiff's response.

Plaintiff states that he requested discovery including prison policies, misconduct reports on prison staff and inmate grievance history reports. He states that a meet and confer occurred with counsel for Defendants, who refused to provide the documents. Plaintiff states that he is entitled to evidence of prison officials' prior bad acts.

Federal Rule of Civil Procedure 56(d) provides:
If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
(1) defer considering the motion or deny it;
(2) allow time to obtain affidavits or declarations or to take discovery; or
(3) issue any other appropriate order.

The Ninth Circuit has held that a party requesting a continuance on ruling on a motion for summary judgment under this rule must include an affidavit or declaration setting forth "the specific facts it hopes to elicit from further discovery," that "the facts sought exist," and "the sought-after facts are essential to oppose summary judgment." *Family Home and Finance Center, Inc. v. Federal Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (citation omitted). A failure to comply with these requirements "is a proper ground for denying discovery and proceeding to summary judgment." *Id.*

(quotation marks and citation omitted).

Here, Plaintiff has failed to make the requisite showing under Rule 56(d). His request, which is not contained within an affidavit or declaration, appears to assert that he is entitled to discovery regarding prior bad acts of the defendants, but he does not state the specific facts he hopes to elicit, how this discovery is essential to his opposition, or how such discovery of prior bad acts would even be relevant to any of the arguments raised by Defendants.

In addition, as the court noted at the August hearing, Plaintiff conducted extensive discovery in this case. A significant number of discovery responses were submitted with his response to Defendants' motion. Plaintiff filed a motion to compel (ECF No. 65), which the court denied without prejudice because Plaintiff did not demonstrate he had complied with the meet and confer requirements. The parties did meet and confer, and Plaintiff never raised any remaining disputes with the court.

As Plaintiff has not satisfied the requirements of the rule, the court recommends that Plaintiff's motion under Rule 56(d) be denied.

**B. Count I- Retaliation-Dr. Koehn and Lyons; Eighth Amendment Deliberate Indifference to Serious Medical Needs-Dr. Koehn, Lyons; Supervisory Liability-Dawn Jones and Dr. Aranas**

**1. Summary of Allegations and Argument**

In Count I, Plaintiff was allowed to proceed with a retaliation claim based on allegations that on February 5, 2014, Dr. Koehn denied Plaintiff medical care for pain in his back, ribs, left hand and left side of his jaw (from an alleged excessive force incident that occurred before his arrival to ESP) because he filed grievances and "snitched" on correctional officers and staff. He claims that he asked Nurse Lyons to intervene to obtain pain medication, and Lyons told Plaintiff to "stop crying like a 2 year old and deal with it" because they did not like prisoners who "snitch" on staff. He contends that on March 28, 2014, he notified the facility's medical nurse supervisor Dawn Jones through an inmate request form (referred to as a "kite") and the prison's grievance process, and asked her to place him back on the sick call list or provide him a pain pack, but she failed to intervene. He similarly alleges that Dr. Aranas failed to intervene in response to his grievances. As a result, he avers that he suffered in extreme pain for two and a half months.

/ / /

Dr. Koehn and Lyons maintain that they terminated the medical visit with Plaintiff after he became argumentative and hostile upon being questioned about whether there was a clinical need for the specific pain medication requested. In particular, Lyons was present during Plaintiff's examination with Dr. Koehn on February 5, 2014, and asserts that Plaintiff became hostile and verbally argumentative with Dr. Koehn, requiring Lyons to ask correctional officers to remove Plaintiff from the examination room, and informing Plaintiff the visit was over. (Lyons Decl., ECF No. 84-30.) Lyons denies ever telling Plaintiff to "stop crying like a two-year-old" because they did not like prisoners who "snitch" on staff. (*Id*.)

Dawn Jones states that on March 2, 2014, Plaintiff was informed via kite answer that his previous medical visit on February 5, 2014, was terminated due to his agitation and arguing; only the medical provider could order his medications; and, he needed to kite if he wished to be seen again. (Dawn Jones Decl., ECF No. 94-33 ¶ 2.) On March 3, 2014, Jones informed Plaintiff that he had been rescheduled to see the medical provider, and suggested he not argue at the appointment, which was set for March 12, 2014. (*Id*. ¶ 3.) On March 12, 2014, she asserts that Plaintiff refused to see the medical provider. (*Id*. ¶ 4.)

Dr. Aranas argues he has no liability for simply responding to grievances, and he had no direct interaction with Plaintiff. (Aranas Decl., ECF No. 84-31.)

Plaintiff argues that the denial of pain medication was retaliatory, noting that Lyons told him to stop crying and deal with it because they did not like prisoners who snitch on staff. (ECF No. 94-1 at 24 ¶¶ 2-3; ECF No. 94-2 at 173, 186-87, 190-92; ECF No. 94-2 at 32 ¶¶ 3-4.) He asserts that even if he was argumentative, he was in full restraints and surrounded by two correctional officers, so there was no reason to refuse him pain medication, which could have included ibuprofen or Tylenol through the "KOP" (keep-on-person) program. (ECF No. 94-2 at 172, 187, 190.) He claims that he refused the medical visit with Dr. Koehn on March 12, 2014, due to tension between himself and Dr. Koehn. (ECF No. 94-2 at 174.) He further contends that Jones had authority to overturn the denial of pain medication. (ECF No. 94-2 at 194.) He also argues that Dr. Aranas had knowledge of his injuries, because he once saw Plaintiff for pain and numbness on his face and prescribed pain medication while a medical provider at HDSP, and as a grievance responder he could have ordered pain medication. (*Id*.

at 194.)

In their reply brief, Defendants argue that Plaintiff fails to present specific facts or evidence to refute that the February 5, 2014 visit was terminated because Plaintiff was argumentative, and he was not prescribed pain medication because there was no clinical need. (ECF No. 112 at 4.)

### 2. Analysis

#### i. Retaliation- Dr. Koehn and Lyons

"Section 1983 provides a cause of action for prison inmates whose constitutionally protected activity has resulted in retaliatory action by prison officials." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such a claim has five elements:

(1) An assertion that a state actor took some adverse action against an inmate
(2) because of (3) that prisoner's protected conduct, and that such action
(4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Jones*, 791 F.3d at 1035 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)).

"The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities as well as a right of meaningful access to the courts." *Id*. (citing *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995)). "[A] plaintiff must show that his protected conduct was the 'substantial' or 'motivating' factor behind the defendant's conduct." *Brodheim v. Cry,* 584 F.3d 1262, 1271 (9th Cir. 2009) (internal quotation marks and citation omitted). To raise a triable issue as to motive, a plaintiff must offer "either direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence [of motive]." *McCollum v. Cal. Dep't of Corr. and Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011) (citation and quotation marks omitted). Circumstantial evidence of motive may include: "(1) proximity in time between protected speech and the alleged retaliation; (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse … action were false and pretextual." *Id*. (internal citation and quotation marks omitted).

While Dr. Koehn and Lyons maintain that they did not provide Plaintiff pain medication and terminated the February 5, 2014 visit because Plaintiff became argumentative (which is supported by the progress notes, ECF No. 85-1 at 3), Plaintiff provides a statement in his declaration that when he sought Lyons' intervention, she told him he was "acting like a two year old" and that "they didn't like

prisoners that snitch[ed] on staff." (ECF No. 94-2 at 32 ¶ 4.)

Defendants argue in their reply that his self-serving statements are insufficient, however, "declarations are often self-serving, and this is properly so because the party submitting it would use the declaration to support his or her position." *Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 497 (9th Cir. 2015) (citing *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) (holding that the district court erred in disregarding declarations as uncorroborated and self-serving). "Although the source of the evidence may have some bearing on its credibility, and thus on the weight it may be given by a trier of fact, the district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature." *Id.*

The court may disregard self-serving declarations that state only conclusions, and not facts, but Plaintiff's declaration, insofar as the statement attributed to Lyons is concerned, states a fact proposed by Plaintiff—that when Dr. Koehn terminated the visit where Plaintiff sought pain medication, Lyons told him they did not like prisoners who "snitched" on staff—and not just a conclusion.

The court finds that Plaintiff's declaration, albeit self-serving, is sufficient to establish a genuine dispute of material fact as to whether Dr. Koehn and Lyons retaliated against Plaintiff on February 5, 2014 when they terminated the visit and he was not prescribed pain medication. Therefore, Defendants' motion should be denied as to the retaliation claim in Count I.

### ii. Eighth Amendment Deliberate Indifference- Dr. Koehn, Lyons, Dawn Jones, Dr. Aranas

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104).

If the medical need is "serious," the plaintiff must show that the defendant acted with deliberate indifference to that need. *Estelle*, 429 U.S. at 104. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *McGuckin*, 974 F.2d at 1060. "A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard,* 744 F.3d 1076 (9th Cir. 2014) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)). Instead, to establish deliberate indifference in the context of a difference of opinion between a physician and the prisoner or between medical providers, the prisoner "'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's health.'" *Snow*, 681 F.3d at 988 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

There is a genuine dispute of material fact as to whether Plaintiff suffered from a serious medical need. Defendants assert that when Plaintiff was transferred to ESP on December 4, 2013, approximately a month after the alleged excessive force incident that resulted in his injuries, he was evaluated by medical and there were no findings for continued care. (ECF No. 112 at 4 n. 2.) They acknowledge, however, that medical records from ESP on November 13, 2013, note complaints of sore ribs and back pain. (*Id*. at n. 1.) While those records did not note wounds, abrasions or deformities, Plaintiff has submitted kites where he subsequently complained of pain in the low back and numbness in his face and thumb, and requested pain medication. (ECF No. 94-2 at 1, 2, 8, 11.)

/ / /

1
2
The court will now address the subjective deliberate indifference prong of the Eighth Amendment claim.

3
4
5
Dr. Koehn and Lyons argue that they were not deliberately indifferent to Plaintiff's serious medical needs, but instead terminated Plaintiff's visit on February 5, 2014, because he became argumentative. (ECF No. 85-1 at 3; Lyons Decl., ECF No. 84-30.)

6
7
8
9
In his declaration, Plaintiff states that he and Dr. Koehn had a debate (and not an argument) about the pain medication. (Pl. Decl., ECF No. 94-1 at 24 ¶ 4.) He asserts that he was in full restraints, and posed no threat to Dr. Koehn or Nurse Lyons, and they could have sent him medication through the facility's KOP (keep on person) program. (*Id.* ¶¶ 5, 6.)

10
11
12
13
14
15
16
Then, after the medical visit was terminated, Plaintiff sent a kite to medical on February 12, 2014, stating that he was supposed to see a doctor for pain medication on February 5, 2014, but the medicine was not prescribed. (ECF No. 85-8 at 2; ECF No. 94-2 at 17.) He asked to see a doctor about his pain, but not the same doctor. (*Id.*) He received this response: "You did not see the doctor, you argued with him. You did not ask for the medicine, you demanded a particular type of medicine. Until you can present your complaints in a civilized and respectful manner, nothing will be accomplished." (ECF No. 85-8 at 2.)

17
18
19
20
21
22
23
24
25
26
He sent another kite to medical on February 23, 2014, stating that he still had not been seen or provided with pain medication. (ECF No. 85-8 at 3; ECF No. 94-2 at 6.) The response stated that Plaintiff was seen by the provider on February 5, 2014, and "per medical provider there is no clinical need for pain meds," and that there was only one medical provider doctor on staff at ESP. (*Id.*) Plaintiff sent his next kite to Nurse Jones on February 27, 2014, stating that he had asked for pain medication several times for pain to the left side of his face, left ribs and lower back. (ECF No. 85-8 at 4; ECF No. 94-2 at 10.) Nurse Jones responded on March 2, 2014: "Your visit with the provider was terminated due to your becoming argumentative and agitated. You will not be prescribed any medication except by the provider. If you wish to be seen by the provider please kite requesting a[n] appointment." (ECF No. 85-8 at 4.)

27
28
Plaintiff sent a kite on March 2, 2014, asking for pain medication again. (ECF No. 85-8 at 5; ECF No. 94-2 at 4.) Jones advised him the next day that he was rescheduled to see the provider, and

13

suggested he not argue. (Id.)

Dr. Koehn terminated the February 5, 2014 visit, likely because Plaintiff became argumentative. The question is whether he was deliberately indifferent when he did not prescribe pain medication when Plaintiff continued to kite about his pain and request medication in the subsequent months. The medical records indicate Dr. Koehn's opinion that pain medication was not clinically indicated, but Plaintiff provides a statement in his declaration, as well as kites and grievances, indicating that he continued to suffer in pain, which is sufficient to raise a genuine dispute of material fact as to deliberate indifference when there is a difference of opinion about the course of treatment. (ECF No. 94-2 at 32 ¶¶ 5-6.) In addition, Plaintiff eventually received at least ibuprofen because kites sent in July 2014 indicate that he was seeking something stronger than ibuprofen to alleviate his pain. (ECF No. 94-2 at 12, 16, 26.) Viewed in the light most favorable to Plaintiff, as the court must do at this stage, this tends to show that at some point it was determined his condition warranted pain medication. Therefore, summary judgment should be denied on this claim insofar as Dr. Koehn is concerned.

With respect to Lyons, she was the nurse present with Dr. Koehn at the appointment that day. Plaintiff asked her in discovery why she refused him pain medication at the February 2014 visit, and she responded that she did not recall that particular incident, but that she cannot order medicine or tell the medical provider to do so. (ECF No. 94-1 at 37, interrogatory no. 3.) Plaintiff also claims, however, that when Dr. Koehn was terminating the visit, he tried to get Lyons to intervene, and at that time she allegedly essentially told him no because they did not like inmates who "snitched" on staff. This is sufficient to create a genuine dispute of material fact as to whether Lyons was deliberately indifferent to a serious medical need.

The court will now address the claims insofar as Dawn Jones and Dr. Aranas are concerned.

With respect to Jones, Plaintiff sent her a kite on February 27, 2014, asking for pain medication for pain in his face, ribs and back, which he claimed had been denied previously. (ECF No. 85-8 at 4; ECF No. 94-2 at 10.) She responded on March 2, 2014, that his visit was terminated due to his becoming argumentative, and that if he wished to be seen he needed to kite to request an appointment. (ECF No. 85-8 at 4.) Plaintiff sent her another kite on March 2, 2014, asking for pain medication, and Jones advised him that he was rescheduled to see the provider, and suggested he not argue. (ECF No. 94-2 at

4.) Plaintiff apparently refused the rescheduled appointment on March 12, 2014. (ECF No. 94-33 ¶ 4; ECF No. 85-1 at 3.)

Plaintiff also submitted an informal level grievance regarding the denial of pain medication on May 28, 2014, and Jones, who was assigned to respond, reiterated that the chart indicated he became argumentative and the visit was terminated, and directed him to ask for an appointment if he wished to be seen again. (ECF No. 84-16 at 6-10.)

There is no dispute as to Jones' involvement, and the court cannot conclude that Jones' conduct amounts to deliberate indifference. The evidence does not suggest she knew of and disregarded a risk to Plaintiff's health. Instead, she was advised of Plaintiff's complaint, and advised him first he needed to request another appointment, and then told him he had been rescheduled, and Plaintiff refused his rescheduled appointment.

Dr. Aranas' only involvement was denying Plaintiff's second level grievance. (ECF No. 84-31.) Plaintiff contends that he once saw Dr. Aranas at HDSP with respect to pain and numbness in his face and prescribed pain medication, but provides no pertinent details that would allow the court to conclude that this somehow made him deliberately indifferent following the February 5, 2014 visit at ESP. (ECF No. 94-2 at 18.)

As indicated above, Jones denied Plaintiff's informal level grievance, instructing him to request an appointment if he wished to be seen again. Plaintiff filed a first level grievance, which was assigned to J. Garner (who is not a defendant). Garner reiterated that the records indicated he became argumentative when he saw Dr. Koehn on February 5, 2014, and the visit was terminated, and that he had been given an opportunity to be seen at sick call on March 12, 2014, and refused. (ECF No. 84-16 at 4.) Garner recommended that Plaintiff kite to request another appointment if he still had concerns about his back pain. (*Id.*) Plaintiff then filed a second level grievance, disagreeing with the first level. (ECF No. 84-16 at 2.) Dr. Aranas was assigned to the second level grievance, and denied it, stating that he agreed with the first level response which had instructed Plaintiff to request another appointment. (*Id.* at 3.)

Like Jones, the court cannot conclude that Dr. Aranas' conduct amounts to deliberate indifference. He simply reiterated the advice given at the prior grievance levels that Plaintiff should get

1
2
another appointment if he was still having issues with pain, and refrain from arguing with the medical provider.

3
4
5
In sum, the court recommends that Defendants' motion be denied with respect to the Eighth Amendment deliberate indifference claim in Count I against Dr. Koehn and Lyons, and granted as to Dawn Jones and Dr. Aranas.

6
**C. Count II- Retaliation- Artinger, Kimbrell, Ornelas**

7
8
9
10
11
12
13
14
Plaintiff alleges that on March 8, 2014, Artinger, Kimbrell and Ornelas were involved in tearing up his cell and throwing away his grievances and legal material because Plaintiff had filed grievances against them. He avers that Kimbrell and Ornelas had taken him to the recreation yard, and then were ordered by Artinger to conduct an "ugly" search of his cell because Plaintiff had written grievances against them and other officers at ESP. He asserts that as he was in the yard, he could see Ornelas and Kimbrell looking through his envelopes, and throwing the legal envelopes into the trash along with legal pads and books. He claims that Ornelas yelled at him to continue writing grievances and she would do it again. He alleges that he asked Artinger to tell them to stop, but he refused.

15
The elements of a retaliation claim are set forth above in the analysis of Count I.

16
17
18
19
20
21
22
Ornelas and Kimbrell argue they did not throw away grievances or destroy legal work and books. (Kimbrell Decl., ECF No. 84-29; Ornelas Decl., ECF No. 84-35). Artinger asserts that he never ordered Ornelas and Kimbrell to conduct a cell search and destroy grievances. (Artinger Decl., ECF No. 84-25.) Artinger states he was unaware Plaintiff had filed grievances against him until May 27, 2016, and that he never ordered a cell search in retaliation for Plaintiff's conduct. (Artinger Decl., ECF No. 84-25.) They argue that Plaintiff was actively litigating cases and case law items were missing from the library, so his cell was searched for the missing items in accordance with prison regulations.

23
24
25
26
An investigation detail report submitted by Defendants states that Plaintiff was upset over a cell search, and Sergeant Kirchen and "CERT" responded and escorted Plaintiff back to his cell. (ECF No. 85-9 at 2.) The document lists the staff involved as Kirchen, Mingo, Ornelas, Artinger, and Kimbrell. (*Id*.)

27
28
In his declaration, Plaintiff maintains that he was retaliated for filing grievances and lawsuits against NDOC staff and employees by Artinger, Ornelas, and Kimbrell on March 8, 2014. (ECF No. 94-

1 at 59 ¶ 2.) He reiterates his claim that his legal documents and books were trashed by Ornelas and Kimbrell during the cell search while he was in the yard. (ECF No. 94-1 at 59 ¶ 3.) He asserts that Artinger ordered Kimbrell and Ornelas to conduct the retaliatory search. (ECF No. 94-1 at 59 ¶ 4.)

Defendants argue in their reply that Plaintiff lacks personal knowledge regarding the facts of the search because he was on the yard when it was supposedly taking place; however, he claims that he could see what was going on inside the cell from the yard, and that Artinger yelled to Plaintiff on the intercom while the search was underway: "this should teach you about writing grievances on us Hendrix." (ECF No. 94-2 at 175.) He also states that when he asked Artinger to tell Ornelas and Kimbrell to stop destroying his property, Artinger responded: "hell no," and closed Plaintiff's cell door so Plaintiff could no longer see into the cell. (*Id*.) Therefore, a genuine dispute of material fact exists as to whether Defendants retaliated against him by destroying property in his cell because he had filed grievances. Summary judgment should be denied as to the retaliation claim in Count II.

**D. Count II-First Amendment, RLUIPA- Artinger, Timothy Jones, Kimbrell, Ornelas, Huston**

Plaintiff alleges that he was denied his kosher food tray by Artinger, Kimbrell, and Ornelas on March 8, 2014, because he had notified the sergeant about their search, and Huston failed to intervene when he was notified he had not been given his tray. Plaintiff contends he also notified Timothy Jones of the incident, and asked for another kosher food tray, and was denied, with Jones stating: "Because you['re] a rag head Muslim and I hate those pieces of shits." Plaintiff then spoke to Huston about the incident, who said: "Fuck your religious holy month, you ain't getting no kosher tray from me…", and ordered Artinger not to feed Plaintiff anything.

"The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment … prohibits government from making a law prohibiting the free exercise [of religion]." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citations and quotation marks omitted.) "The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain a prison security." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam). To implicate the free exercise clause, a prisoner must establish his belief is both sincerely held and rooted in religious belief. *See Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). "A person asserting a free exercise claim must

show that the government's action in question substantially burdens the person's practice of her religion." *Jones v. Williams,* 791 F.3d 1023, 1032 (9th Cir. 2015) (citing *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir. 1987), *aff'd sub nom. Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989)). "A substantial burden … place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (citations and question marks omitted).

RLUIPA provides that the government may not impose a substantial burden on religious exercise of an inmate unless it demonstrates the burden furthers a compelling government interest, and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-1(a).

Defendants maintain that Plaintiff was not denied his food tray, but he voluntarily refused it. In his declaration, Artinger states he did not order the withholding of food in retaliation for Plaintiff's conduct. (Artinger Decl., ECF No. 84-25.) Huston states that he did not refuse Plaintiff a religious meal on March 8, 2014, and did not make disparaging comments about Plaintiff, nor did he order staff to violate the Constitution. (Huston Decl., ECF No. 84-28.) Kimbrell likewise states that he did not throw Plaintiff's kosher food tray in the toilet, or witness Ornelas or Artinger do so. (Kimbrell Decl., ECF No. 84-29.) Ornelas denies this occurred as well. (Ornelas Decl., ECF No. 84-35.) Timothy Jones states in his declaration that he researched the incidents from March 8, 2014, involving Plaintiff, and states that it involved not him, but Sergeant Kirchen. (Timothy Jones Decl., ECF No. 84-42.)

Plaintiff argues that before Artinger closed the door to his cell, he saw his religious diet food tray he had received before going to the yard being thrown away by Ornelas and Kimbrell. (ECF No. 94-2 at 175-76; ECF No. 94-1 at 59 ¶ 3.) He claims that he asked Artinger to re-order his tray, but Artinger responded: "You think that's something, wait until your dinner tray gets here." (ECF No. 94-2 at 176.) Plaintiff states that he told Timothy Jones about the situation, and Jones replied: "You deserve what you get, now stop harassing my officers with grievances." (ECF No. 94-2 at 176, 195; ECF No. 94-1 at 60 ¶ 5) He claims that he advised Huston of what occurred, and Huston refused to provide him with a replacement food tray, telling him: "Fuck your religious holy month, you ain't getting no kosher tray from me." (ECF No. 94-2 at 195, ECF No. 94-3 at 1.) He maintains that T. Jones, Huston, Ornelas, Kimbrell and Artinger refused to provide him with his religious food tray after knowing it had been

1  trashed in his cell. (ECF No. 94-3 at 1.)

2      Plaintiff filed an informal level grievance, asserting that on March 8, 2014, he was denied his

3  religious common fare lunch tray by Artinger, Kimbrell, Jones and Huston, who told him he would get

4  it when he stopped writing grievances. (ECF No. 84-19 at 7-9.) The informal level response stated there

5  was *not* a notation indicating Plaintiff refused his meal that date, and found he had not provided evidence

6  that he did not receive his food. (*Id.* at 6.) Plaintiff submitted a first level grievance, again claiming that

7  he was refused his meal by the officers. (*Id.* at 5.) The first level grievance response, however, stated that

8  Plaintiff did refuse his lunch that day. (*Id.* at 4.) Plaintiff filed a second level grievance, and the

9  grievance response stated, like the first level response, that Plaintiff had refused his lunch meal on

10 March 8, 2014. (*Id.* at 2-3.)

11     In their reply, Defendants again argue that Plaintiff's only evidence is a hearsay statement from

12 Huston, which is inadmissible. (ECF No. 112 at 6-7.)

13     There is a genuine dispute of material fact as to whether Defendants refused to give Plaintiff his

14 kosher meal tray on March 8, 2014, or whether he refused his lunch that date. There is also a dispute as

15 to Timothy Jones' involvement, as Plaintiff asserts that he spoke with Jones, citing specific statements

16 he attributes to Jones, while Jones states that he was not the officer involved. Plaintiff also reported

17 Jones as being one of the officers involved in his grievance on the issue.

18     Defendants' argument that Plaintiff cannot rely on the hearsay statement of Huston is unavailing

19 because under the rules of evidence, an opposing party's statement is not hearsay. Fed. R. Evid.

20 801(d)(2).

21     As a result, summary judgment should be denied with respect to the First Amendment and

22 RLUIPA claims in Count II.

23 **E. Count III-Eighth Amendment Conditions of Confinement-Winsor; Supervisory Liability-**

24 **Baker and Williams**

25     Plaintiff alleges that on March 12, 2014, he was denied adequate clothing and a towel through

26 December of 2014, which impacted his ability to exercise outdoors as well as his health. He claims that

27 he had turned in an inmate request form seeking a six-month clothing exchange, as required by NDOC,

28 and when he turned in his state-issued socks, t-shirts, underwear and towel, Winsor refused to provide

19

him with the new issue of clothing and towel. He contends that Baker and Williams denied his requests and grievances regarding the lack of clothing.

The Eighth Amendment prohibits the imposition of cruel and unusual punishment. U.S. Const amend. VIII. "It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney,* 509 U.S. 25, 31 (1993). Although conditions of confinement may be restrictive and harsh, they may not deprive inmates of "the minimal civilized measures of life's necessities." *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981). Prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Conner,* 515 U.S. 472 (1995); *see also Brown v. Plata,* 131 S.Ct. 1910, 1929 (2011) ("Prisoners are dependent on the State for food, clothing, and necessary medical care. A prisoner's failure to provide sustenance for inmates 'may actually produce physical torture or lingering death.'"). "The circumstances, nature, and duration of a deprivation of … necessities must be considered in determining whether a constitutional violation has occurred." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

Where a prisoner alleges injuries stemming from such conditions, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). The alleged deprivation must first be, in objective terms, "sufficiently serious." *Farmer,* 511 U.S. at 834 (citation omitted). Second, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id*. at 837. Thus, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 835.

The Ninth Circuit has found that "[t]he denial of adequate clothing can inflict pain under the Eighth Amendment." *Walker v. Sumner*, 14 F.3d 1415, 1421 (9th Cir. 1994), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). Deprivation of outdoor exercise can also violate the Eighth Amendment. *See Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996). "[A] temporary denial of outdoor exercise with no medical effects [, however,] is not a substantial deprivation." *May v. Baldwin*,

109 F.3d 557, 565 (9th Cir. 1997).

Defendants assert that during March of 2014, Plaintiff was offered the opportunity to exercise on twenty-two days, and during this time, he showered ten times. (ECF No. 84-24 at 2-17). They further assert that his medical records do not indicate he suffered from a cold in the March-July 2014 timeframe. In addition, Defendants argue that Williams and Baker have no liability for simply responding to grievances.

Baker states in her declaration that Plaintiff requested an exchange of three pairs of socks and a state-issued towel. (Baker Decl., ECF No. 84-40 ¶ 6.) Winsor explained to Plaintiff he exceeded the allowable issue. (*Id*.) He needed to turn in two pairs of state-issued boxers and six pairs of socks to receive three pairs of socks and a towel. (*Id*.) If he refused, he would not receive the socks and towel he requested. (*Id*.) Baker further states that her involvement was limited to responding to the first grievance, which reflects that an inventory was conducted, and all items Plaintiff was allowed to have in his possession had been issued to him. (Baker Decl., ECF No. 84-41 ¶ 2-3.)

Plaintiff argues he was denied adequate clothing and a state-issued towel for ten to eleven months by Winsor, who knew of Plaintiff's indigence and that his cell was extremely cold during the winter months, which caused him to be sick and deprived of outdoor exercise. (ECF No. 94-2 at 177, ECF No. 94-3 at 2-4.) He claims that as a result, he became sick, with coughing, sneezing and headaches, and had to dry off with a dirty old sock after showering. (*Id*.) While Defendants assert that Plaintiff was offered yard time, and was able to shower, Plaintiff contends the logs are forged, and the fact remains that he could not go to the yard because he did not have adequate clothing. (ECF No. 94-2 at 178, ECF No. 94-3 at 4.) In addition, Plaintiff contends that they ignore the months of May through November. (*Id*.)  He says that he notified Baker and Williams through inmate request forms and grievances, and they did nothing. (ECF No. 94-3 at 5-6.)

In his declaration, Plaintiff states that Winsor denied or delayed his state-issued clothing that he turned over to the laundry facility, and never received back from December 2013 to November of 2014. (ECF No. 94-2 at 74 ¶ 2.) He asserts that he had "no clothing underwear, t-shirts, socks and thermal garments, etc. etc. to combat the extreme coldness of [his] prison cell and the cold weather of Ely Nevada to have exercise in the recreation yard." (*Id*. at 75 ¶ 3.) He claims he became sick and had

muscle soreness from the lack of exercise. (*Id*. ¶ 4.) He states that he notified Baker of the laundry withholding and nothing was done. (*Id*. ¶ 5.) He also contends that Baker and Williams were put on notice through his kites and grievances. (*Id*. ¶ 6.) He has submitted the kites and grievances on this issue as evidence.

On December 17, 2013, several months before the allegations of this claim arose, Plaintiff sent a kite to the laundry supervisor, asking for replacement of his towel that he claimed was removed from his laundry bag the day before. (ECF No. 94-1 at 62.) The response stated: "No laundry found." (*Id*.) Plaintiff sent another kite to the laundry supervisor on January 8, 2014, stating that his laundry came back to him on January 7, 2014, without his state-issued towel, and he asked for a replacement. (ECF No. 94-1 at 64.) The response stated: "nothing found." (*Id*.) Plaintiff sent his next kite on February 3, 2014, reiterating his claim that after he sent his laundry bag in, it came back without his state-issued towel. (ECF No. 94-1 at 66.) The response stated: "exceed allowable." (*Id*.)

Plaintiff sent a kite to Baker on February 5, 2014, stating that he turned over his laundry bag with all of his underclothing and the laundry had not sent it back. (ECF No. 94-2 at 96.) He also stated that he was missing his state-issued towel, and had been washing up with a ripped up sock. (*Id*.)

Plaintiff sent a kite on what appears to be March 2 or 3, 2014, asking to exchange three pairs of socks for new ones, and also for a state-issued towel. (ECF No. 94-1 at 69.) The response stated: "need prior approval." (*Id*.) On March 5, 2014, Plaintiff sent a kite to Winsor stating that he wanted to exchange three pairs of socks and receive a state-issued towel since his had not been returned. (ECF No. 94-1 at 67.) He was advised that he exceeded the allowable issue, and was told to bring it into compliance by sending in two pairs of state-issued boxers, and all six pairs of socks to receive three pairs of socks and a towel. (*Id*.)

Plaintiff submitted a grievance dated March 12, 2014 (2006-29-76072), asserting that Winsor purposefully denied his laundry exchange of state-issued socks and a towel. (ECF No. 84-20 at 5, 7-8.) He stated that he sent a request form asking to exchange his socks and for a towel on March 9, 2014, and was denied his request after turning in multiple kites on March 10, 2014. He indicated that he had been asking Winsor for an issue for two months, but was ignored. In the response, assigned to L. Bothe, Plaintiff was advised that the kite to Winsor dated March 5, 2014, was responded to on March 9, 2014,

and directed Plaintiff how to obtain his clothing exchange, and recommended he follow the instructions if he had not yet done so. (*Id*. at 6; ECF No. 94-2 at 78.)

Plaintiff filed a first level grievance. The response to the first level grievance, assigned to Baker, stated:

> I have received your 1st Level Grievance in reference to your allegations of being purposely denied a laundry exchange. Upon speaking with CCSII Bothe, she had staff conduct an inventory of your clothing and you were found in possession of 2 prs of socks, 2 t-shirts, 2 prs of personal underwear and 1 pr of boxers. On 6/23/14 a towel was sent out to you; on 7/2/14 you received 1 t-shirt, 1 pr of boxers and 1 pr of socks bring you into compliance. At this time your issue has been resolved. Your remedy is denied and your grievance is denied.

(ECF No. 94-2 at 79.)

Plaintiff filed a second level grievance, which was assigned to B. Williams, who responded: "You have received your clothing therefore, this issue is resolved. Your request for $100,000 is denied." (ECF No. 94-2 at 80.)

In their reply, Defendants argue that Plaintiff's assertion he was denied the ability to shower and exercise outdoors in March 2014, or that he suffered from a cold between March and December 2014, is belied by the evidence. (ECF No. 112 at 7, ECF No. 114-1 (progress notes from August to December 2014).)

The grounds asserted for granting summary judgment with respect to this claim in Defendants' motion are: that Winsor explained to Plaintiff he exceeded his allowable issue and would need to turn in two pairs of state-issued boxers and six pairs of socks to receive three pairs of socks and a towel; that Plaintiff was "offered" outdoor exercise on twenty-two days, and showered on ten dates in March of 2014; his medical records do not indicate he was suffering from a cold from March to December 2014; and, there is no supervisory liability. (ECF No. 84 at 4, 13-14, ECF No. 112 at 7.)

Plaintiff does not specifically address Winsor's claim that he advised Plaintiff he exceeded his issue, but simply maintains he was denied adequate clothing to combat the cold in his cell and in the recreation yard. The problem is that there is no evidence that Winsor knew of and disregarded a risk to Plaintiff's health so as to give rise to a violation of the Eighth Amendment. Plaintiff sent two kites to the laundry officer in March 2014, stating he wanted to exchange three pairs of socks and receive a state-

issued towel. He did not advise Winsor about the cold conditions in his cell, that he was suffering from a cold, or that he did not have adequate clothing to go to the recreation yard. There is no evidence of any further communication with Winsor after the March 5, 2014 kite. Nor does Plaintiff discuss specific facts detailing when he otherwise communicated this to Winsor.

His grievance, which was responded to at the first level by Baker and the second level by Williams, also discussed wanting to exchange three pairs of socks and obtain a state-issued towel. While he briefly referenced that the socks he had were worn and had holes in them, he did not advise the grievance responders that he was cold in his cell, was suffering from a cold, or did not have adequate clothing to go to the recreation yard. Baker's first level grievance response advised Plaintiff that Bothe had reported that an inventory was conducted, and a towel and other clothing items had been sent to Plaintiff. (ECF No. 94-2 at 79.) Williams' second level response also noted that Plaintiff had received his clothing. (ECF No. 94-2 at 80.)

The court cannot conclude there is evidence sufficient to raise a genuine dispute of material fact as to whether an Eighth Amendment violation occurred. Therefore, summary judgment should be granted in favor of Winsor, Baker and Williams in Count III.

**F. Count V-Cox-Retaliation and Access to Courts**

Plaintiff alleges that on April 6, 2014, Cox deliberately destroyed an amended civil rights complaint which was headed to federal court in retaliation for his filing a grievance against Cox regarding the destruction of his mail. He goes on to aver that Cox failed to return a manila envelope containing the amended complaint, and destroyed it in front of Plaintiff, stating: "Now file a grievance on that." He claims that this hindered his access to the courts because the court rejected the amended complaint as untimely once Plaintiff sent another one in, and the case was dismissed with prejudice.

The elements of a retaliation claim are set forth above. In addition, inmates have a constitutional right to access the courts. *See Bounds v. Smith*, 430 U.S. 817, 828 (1977), *limited in part on other grounds in Lewis v. Casey*, 518 U.S. 343, 354 (1996). "Prisoners have the right[ ] to litigate without active *interference*, … a guarantee that exists so prisoners have a viable mechanism to remedy prison injustices." *Blaisdell v. Frappiea*, 729 F.3d 1237 (9th Cir. 2013) (quotation marks and citation omitted) (alteration and emphasis original), overruled on other grounds in *Richey v. Dahne*, 807 F.3d 1202, 1209

n. 6 (9th Cir. 2015).

Cox states that he did not destroy the amended civil rights complaint on April 6, 2014, but instead returned legal mail to Plaintiff because he failed to designate an amount of money for legal mail postage on his brass slip. (Cox Decl., ECF No. 84-34 ¶ 4). Cox refused to send the mail until Plaintiff completed the brass slip for postage as required by Administrative Regulation 740.02(8)(B). (*Id.*) Plaintiff was given the opportunity to accept the returned legal mail or leave it in the control room. (*Id.*) When Cox finished his shift, Plaintiff's returned legal mail was on the control room counter, and Cox notified the incoming shift of the situation. (*Id.*) When Cox returned to work the next day, the envelope was no longer in the control room. (*Id.*)

Plaintiff does not specifically address this claim, other than to provide Cox's discovery responses. In discovery, Plaintiff asked Cox how he was contacted about a grievance wrote against him on April 6, 2014, and Cox responded that he was not working that day, and had no recollection of any individual grievance Plaintiff may have filed, or the incident in question. (ECF No. 94-2 at 90-92, interrogatory nos. 3, 8.) In another interrogatory response, Cox stated that grievances are not handled by custody staff, and therefore, he would not have known about any accusations made against him. (*Id.* at 92, interrogatory no. 9.)

Neither of these discovery responses raises a genuine dispute of material fact as to whether Cox retaliated against him or hindered his access to the courts. Nor is there any other evidence presented by Plaintiff that raises a genuine dispute. Therefore, summary judgment should be granted in Cox's favor as to these claims.

**G. Count VII-Retaliation-Cox; Eighth Amendment Deliberate Indifference to Serious Medical Needs-Varady, Crowder, Cox**

**1. Retaliation**

With respect to the retaliation claim, Plaintiff alleges that Cox refused to assist Plaintiff in getting his pain and seizure medication on June 2, 2014, because Plaintiff had filed grievances against Cox and "his officers."

/ / /

/ / /

25

Cox argues that Plaintiff was not denied his anti-seizure medications on June 2, 2014, and received both his doses. Cox states he has no recollection of refusing to assist Plaintiff in getting his medication. (Cox Dec., ECF No. 84-34 ¶ 5.)

Plaintiff argues that he was not given his medication in retaliation for his grievance filing. (ECF No. 04-3 at 7.) Plaintiff claims that he called Cox in the control station and asked him to intervene, but Cox said: "You would have received your medication, but you wrote a grievance on my officers, now deal with it." (ECF No. 94-1 at 102 ¶ 4.)

There is a genuine dispute of material fact as to whether Plaintiff was denied his medication, and whether it was denied by Cox because of Plaintiff's grievance filings. Defendants argue that Plaintiff's self-serving statements are insufficient, but as pointed out above, self-serving statements concerning a litigant's version of the facts are sufficient to create a genuine dispute of material fact. Therefore, summary judgment should be denied as to the retaliation claim against Cox in Count VII.

**2. Deliberate Indifference**

The deliberate indifference claim is based on Plaintiff's allegation that on June 2, 2014, Varady, Cox and Crowder failed to give him his pain and seizure medications and ignored his requests, causing him to experience extreme pain and suffer a seizure.

Defendants argue that Plaintiff received both of his doses of anti-seizure medication on June 2, 2014. (ECF No. 85-4 (medication log indicating Plaintiff took both doses of Dilantin on June 2, 2014).) Cox states he has no recollection of refusing to assist Plaintiff in getting his medication. (Cox Dec., ECF No. 84-34 ¶ 5.) Cox states when a nurse is on the housing tier providing inmates with their prescriptions and an inmate calls on the cell intercom, Cox would address the issue with the nurse when the nurse enters the sally port. (*Id.* ¶ 8.)

Plaintiff reiterates this claim in his declaration. (ECF No. 94-1 at 102 ¶ 3.) He says that he called Cox in the control station and asked him to intervene, but Cox said: "You would have received your medication, but you wrote a grievance on my officers, now deal with it." (*Id.* ¶ 4.) He contends that he called Varady and Crowder to provide the medication, but they ignored him. (*Id.* at 103 ¶ 5.) He asserts that he had a seizure during the time he was denied his medication, fell off his bed and hit his head on the concrete floor and split his lip. (*Id.* ¶¶ 6-7.) He states that Crowder was doing institutional count, and

asked him: "Did you have fun on the roller coaster?" (*Id.* ¶ 7.)

Plaintiff argues that Varady purposely denied Plaintiff his seizure medication when he walked past Plaintiff's cell, and when Plaintiff banged on the cell door to get her attention, he claims that Crowder nudged her forward and also ignored Plaintiff. (ECF No. 94-2 at 178, ECF No. 94-3 at 7.) He asserts that Cox, who was the bubble control officer, was notified of this by Plaintiff via the emergency call button, but ignored Plaintiff. (*Id.*)

Again, there are disputed facts including whether Plaintiff took his medication or whether it was denied him by Cox, Varady and Crowder, and the purported circumstances of such denial. Therefore, summary judgment should be denied as to the deliberate indifference claim against Cox, Varady and Crowder in Count VII.

## H. Count IX-Eighth Amendment Conditions of Confinement-Dr. Koehn, Lyons, Baker, Fletcher, Byrne, Dawn Jones, Dr. Aranas

Plaintiff contends that on June 25, 2014, Baker, Fletcher and Byrne ordered him placed in the facility's infirmary housing unit. Plaintiff alleges that Dr. Koehn and Lyons deprived him of socks and underwear; placed him in a high bed without guardrails when they were aware he suffered from a seizure disorder; denied him out-of-cell exercise; and, were aware his cell was covered in feces and urine. He further avers that Baker, Fletcher, Byrne, Dawn Jones and Dr. Aranas were aware of the conditions of his cell, either from visiting it or denying his grievances on the subject, and refused to do anything.

Preliminarily, the court notes that Plaintiff spends a great deal of time in his opposition discussing his claims in Count VIII for retaliation and violation of the Eighth Amendment related to his conditions of confinement in the infirmary asserted against Rigney, Pinkham and Fletcher, but Defendants have not moved for summary judgment as to these claims. He also asserts several times that Dr. Koehn placed him in the infirmary in retaliation for filing grievances, but he was not permitted to proceed with a retaliation claim against Dr. Koehn based on these facts. Therefore, the court will disregard those arguments.

Defendants argue that Plaintiff was ordered admitted to the infirmary after he refused to take his anti-seizure medications for four days. (*See* ECF No. 85-1 at 4; ECF No. 85-2 at 2; ECF No. 85-3 at 4.) They state that there are no orders that he be deprived of state-issued clothing, that he sleep on a high

bed without guardrails, that he be denied out-of-cell exercise, or that he be placed in a feces or urine infested cell.

While Dr. Koehn maintains that Plaintiff was sent to the infirmary for medication non-compliance, Plaintiff refutes this because he claims if they were looking out for his safety, he would not have been placed in an unsafe cell with a high bunk with no guard rails, with

Dr. Koehn denying his requests to move to the lower bunk. (*Id*. at 180, ECF No. 94-3 at 11.) He also argues that NDOC's policies did not require Plaintiff to be placed in the infirmary for medication noncompliance. (*Id*. at 181, ECF No. 94-3 at 11.) He asserts that while he was in the infirmary for seventy-eight days, he was denied out-of-cell exercise for no penological reason. (ECF No. 94-2 at 181.) He contends that Dr. Koehn, Baker, Fletcher, Byrne, Lyons, violated the facility's policy when they did not issue his underclothing. (ECF No. 94-2 at 181, ECF No. 94-3 at 11-12.) He reiterates that he was placed in an unsanitary cell, and that Dr. Koehn, Lyons and Fletcher visited him there, and Baker and Byrne were aware of the conditions, and did nothing. (ECF No. 94-2 at 181-82, ECF No. 94-3 at 10, 13.)

Plaintiff states that he was approached by Dr. Koehn on June 26, 2014, who told him that the cell would be his new home, and he stayed there for seventy-eight days. (ECF No. 94-2 at 120 ¶ 5; ECF No. 94-2 at 122-23 ¶ 2.) Plaintiff claims that it was at this time that he made Dr. Koehn aware of the feces and urine in his cell. (ECF No. 94-2 at 122-23 ¶ 2.) He further states that he was denied the opportunity for out-of-cell exercise by Dr. Koehn during these seventy-eight days in the infirmary. (ECF No. 94-2 at 123 ¶ 3.) He was also without personal property such as his underwear, t-shirts and socks. (ECF No. 94-2 at 123 ¶ 4.)

Plaintiff then states in his declaration that he warned Dr. Koehn that the bed bunk was too high, at least three feet with no guard rails, and there was a lower bunk bed across from him that was empty, but he was told to stay and sleep on the higher bed, knowing Plaintiff had a seizure disorder. (ECF No. 94-2 at 123 ¶¶ 5-6.)

Plaintiff raises a genuine dispute of material fact as to the conditions in his infirmary cell by stating that he was in fact deprived of clothing, was made to sleep on a high bed without guard rails when he suffers from seizures, was denied out-of-cell exercise for seventy-eight days, even when compliant with his medications, and was placed in a cell with urine and feces in it. The court will now

address whether he has raised a genuine dispute of material fact as to the culpability of each of the Defendants named in this claim.

The court finds that Plaintiff raises a genuine dispute of material fact as to whether Dr. Koehn and Lyons violated the Eighth Amendment because Plaintiff states that they were put on notice as to the conditions when they visited his cell and did nothing to remedy the situation. Therefore, summary judgment should be denied as to Dr. Koehn and Lyons.

Dawn Jones states in her declaration that on June 20, 2014, it was documented in Plaintiff's chart that he refused his medications for four days, and he was informed of the possibility of having a seizure and of potential injury if he refused to take his medications. (Dawn Jones Decl., ECF No. 84-33 ¶ 5; ECF No. 85-1 at 4; ECF No. 85-4 at 4.) On June 25, 2014, he was admitted to the infirmary for non-compliance with his seizure medications, and while there he refused his medications on numerous occasions. (Dawn Jones Decl., ECF No. 84-33 ¶ 6; ECF No. 85-1 at 4-23; ECF No. 85-2 at 2; ECF No. 85-3 at 4; ECF No. 85-4.) She states that he remained in the infirmary until September 22, 2014, and during his stay, no seizure activity was observed or reported. (*Id*.) She states that cells in the infirmary are cleaned by porters before and after admission of another inmate, except in emergencies. (Dawn Jones Decl., ECF No. 84-33 ¶ 7.)

The only evidence of Jones' involvement is as a responder to two informal level grievances. In grievance 2006-29-83348, dated August 3, 2014, Plaintiff stated that on June 25, 2014, Koehn authorized Rigney and another CERT member to remove him from his housing unit. (ECF No. 94-2 at 127.) He said this was done for allegedly not taking seizure medication, but claimed it was actually in retaliation for filing a lawsuit. (*Id*. at 135.) He mentioned he was subject to harsh conditions including no personal property (shower shoes, clean underwear, socks and t-shirts), no outdoor exercise, no broom or mop to clean his cell, but only comet for the toilet with no toilet brush. (*Id*. at 135-36.) He also stated that he had ordered legal supplies from the law library, but did not receive them. (*Id*. at 136.) He claimed that the medicine non-compliance was a "cover-up" because the medical policy states that when an inmate refuses his medicine, he must sign three refusal sheets, but he did not do this before June 25, 2014. (*Id*.)

/ / /

Jones responded: "You were admitted to the infirmary for non-compliance with your seizure medication. You received your legal property soon after your admission and you also received clean clothing. You may not go out to yard while you continue the non-compliance with your medication due to the risk of injuring yourself if you have a seizure." (ECF No. 94-2 at 128.)

As is pertinent to this claim, Plaintiff advised Jones that he was placed in the infirmary without certain clothing and property items, was not permitted outdoor exercise, and had not received his legal supplies. He also questioned his placement in the infirmary for medication non-compliance. While he mentioned not having certain cleaning supplies, he did not apprise her of his cell being covered in feces and urine. Nor did he mention the bed being high without guard rails. As to the property and clothing, Jones responded that he received his legal property and clean clothing. Plaintiff has not introduced evidence that he reached out to Jones after this to advise her he did not in fact receive those items. Therefore, to the extent his claim against Jones is based on allegations that she knew of and disregarded a risk to his health or safety based on being without his clothing or legal items, the condition of his cell or bed height, summary judgment should be granted in favor of Jones.

The remaining issue is whether Jones was deliberately indifferent to his claim that he was denied outdoor exercise. Jones responded to this by advising Plaintiff that he could not go to the yard while he was non-compliant with his medication due to the risk of injury if he had a seizure.

Plaintiff filed another grievance on August 21, 2014, grievance 2006-29-84335, where he stated that he was taken to the trauma room of the infirmary that day to seek Dr. Koehn, who reviewed his chart and saw Plaintiff was continuously taking his seizure medication but refused to allow him to return to his housing unit, and access to recreation, despite having promised to do so earlier. (ECF No. 94-2 at 143, 145-146.) He claimed that this demonstrated that Dr. Koehn was retaliating against him for writing grievances and litigation. (*Id.*) The informal level grievance was assigned to Jones, who responded: "Since August 16, 2014 you have taken your medication 10 times in a 20-day period. That is not being compliant with your medications. You refused to see the provider on sick call on 9/4/14. There is no retaliation against you." (ECF No. 94-2 at 144.)

Plaintiff has not introduced evidence that he advised Jones further that he was in fact compliant with his medication, and then still refused access on the yard, or that he advised her that he was

experiencing medical effects as a result of the deprivation of outdoor exercise. *See May v. Baldwin*, 109 F.3d at 565 ("temporary denial of outdoor exercise with no medical effects is not a substantial deprivation"). The court cannot conclude that advising Plaintiff that an inmate with a seizure disorder who is non-compliant with his medication and has a risk of injury may not access the yard until he became medication compliant amounts to deliberate indifference under the Eighth Amendment. Therefore, summary judgment should be granted in Jones' favor on this claim.

The court will now address the claim as asserted against Dr. Aranas.

In the first level grievance for grievance 2006-29-83348, Plaintiff stated that he had been denied out-of-cell exercise and was made to sleep in a high bed with no guard rails. (ECF No. 94-2 at 132.) The first level grievance was assigned to J. Garner, who is not a defendant, who responded:

> You were admitted for medication non-compliance of your seizure medicine. This was a problem you chose to test throughout your stay in the infirmary. Medical is tasked with making the best effort it can to reassure your safety and this is what we do as well as we can. Unfortunately it also creates limitations that we have to enforce until you comply with the prescriber's treatment requests and this is done entirely to make sure you are in the safest environment possible

(ECF No. 94-2 at 129.)

He filed a second level grievance, claiming he was retaliated against for filing grievances. (ECF No. 94-2 at 133.) This was assigned to Dr. Aranas, who agreed with the first level response. (*Id.* at 131.)

In the first level grievance for grievance 2006-29-84335, Plaintiff disagreed with the informal level response, stating that Dr. Koehn refused him out-of-cell exercise, resulting in muscle cramps. (ECF No. 94-2 at 148.) The first level grievance was assigned to G. Carpenter (not a defendant), who reiterated the informal level response. (ECF No. 94-2 at 147.)

Plaintiff filed a second level grievance in 2006-29-84335, disagreeing with the first level response, and stating that Dr. Koehn deprived him of returning to his housing unit for the purpose of harassing, humiliating and embarrassing him by leaving him in the infirmary in a cell that was covered in feces, with no out-of-cell exercise, and a three-and-a-half-foot bed with no guard rails. (ECF No. 94-2 at 149, 152.) The second level grievance was assigned to Dr. Aranas, who denied it, agreeing with the informal and first level responses. (ECF No. 94-2 at 151.)

/ / /

1

2     Dr. Aranas argues he has no liability for simply responding to grievances, and never had any

3     direct interaction with Plaintiff. (Aranas Decl., ECF No. 84-31.) Plaintiff maintains that his grievances

4     put Dr. Aranas on notice of his residence in the infirmary under these conditions, yet Dr. Aranas did

nothing. (ECF No. 94-3 at 14-15.)

5

6     Unlike the grievances Jones reviewed, the subsequent grievances did assert that Plaintiff was

7     suffering medical effects, i.e., leg cramps, as a result of the deprivation of exercise. The grievance also

8     alerted Dr. Aranas to Plaintiff's claim that he had been placed in a feces-covered cell, and that he had

9     a seizure disorder but had been placed in a bed that was over three feet off the ground with no guard

10    rails. While Defendants argue there were no official orders for these conditions, Dr. Aranas did not

11    respond to Plaintiff's claims in his grievances that he was in fact exposed to these conditions. Therefore,

12    there is a genuine dispute of material fact as to whether Dr. Aranas violated the Eighth Amendment

concerning these conditions.

13    Contrary to Defendants' assertion, a supervisory defendant may be held liable under the Eighth

14    Amendment when he is aware of claimed denial of medical care through the review of grievances, but

15    then fails to act to prevent further harm. *See Snow*, 681 F.3d at 989. Therefore, summary judgment

16    should be denied as to Dr. Aranas.

17    The court will now turn to defendants Baker, Fletcher, and Byrne.

18    Baker states that she does not recall speaking with Plaintiff on July 3, 2014, and if she witnessed

19    him housed in a dirty cell she would have ordered him moved to another cell. (Baker Decl., ECF No.

20    84-41 ¶¶ 4-5.) There is no evidence presented from Fletcher or Byrne on this claim. In any event,

21    Plaintiff states that during a video conference he asked Fletcher and Baker for a cell change or cleaning

22    of his cell, but this was denied unless he agreed to settle his lawsuit. (ECF No. 94-3 at 13; see also ECF

23    No. 94-2 at 123-24 ¶ 7.) He also contends that Byrne, Baker and Fletcher visited him in the infirmary

24    and refused a change from the unsanitary living conditions. (*Id*. at 124 ¶ 8.)

25    While Defendants argue that Plaintiff's self-serving statements are insufficient to create a

26    genuine dispute of material fact, the court finds to the contrary. Plaintiff's statements, albeit self-serving,

27    concern his version of specific factual events and are not simply conclusory. As such, they are sufficient

28    to raise a genuine dispute of material fact as to the liability of Baker, Fletcher and Byrne, and summary

judgment should be denied as to Baker, Fletcher, and Byrne,

In sum, summary judgment should be denied on the Eighth Amendment conditions of confinement claim in Count IX as to Dr. Koehn, Lyons, Dr. Aranas Baker, Fletcher, Byrne, and granted as to Dawn Jones.

**I. Count IX-Retaliation-Fletcher and Baker**

Plaintiff alleges that Fletcher and Baker told Plaintiff he would not have his cell cleaned or changed because he refused to settle his civil rights lawsuit.

There is no evidence presented by Fletcher with respect to this claim; therefore, summary judgment should be denied as to Fletcher.

Baker states that if she witnessed Plaintiff housed in such a cell, she would have ordered him moved. Plaintiff, on the other hand, has presented statements in his declaration that Baker was aware of the conditions of his cell and refused to rectify the situation unless Plaintiff agreed to settle a lawsuit. Therefore, there is a genuine dispute of material fact as to whether Baker retaliated against him, and summary judgment should be denied as to Baker.

**J. Count X-Eighth Amendment Deliberate Indifference-Gregersen**

Plaintiff alleges that Gregersen was aware Plaintiff was prescribed *pain medication*, but refused to give it to him, resulting in his suffering in extreme pain on July 22, 2014.

Gregersen maintains that Plaintiff refused his morning and evening prescriptions of *anti-seizure* medications on July 22, 2014, and signed a refusal form. (Gregersen Decl., ECF No. 84-27 ¶ 4; ECF No. 85-5 at 2-3.) In her declaration, she states that as a licensed practical nurse (LPN) she cannot independently decide to deny medications to a patient ordered by a medical provider. (Gregersen Decl., ECF No. 84-27 ¶¶ 2-3.) She claims that progress notes from July 22, 2014 do not reflect any complaints of extreme pain. (ECF No. 85-1 at 12.)

Plaintiff submitted an emergency grievance dated July 22, 2014, stating he had notified Nurse Troy he was in extreme pain, and Troy advised Plaintiff to tell the other nurse. (ECF No. 84-22 at 2.) When the nurse approached, Plaintiff advised he was in extreme pain and needed *pain medication*, and he said he would let the doctor know. (*Id*.) Nurse Gregersen told him she would not give him the *pain medication* because he would not see the doctor. (*Id*.) The response said that medical was aware of the

situation, and the provider said Plaintiff needed to be seen to receive pain medication. (*Id.*, ECF No. 84-23 at 9.)

Plaintiff filed a regular grievance on the issue the same date (2006-29-83163). (ECF No. 94-23 at 5, 7-8.) He reiterated that Gregersen told him Plaintiff would not be given the *pain medication* because he refused to see the doctor, and he suffered in pain for nine hours.   (*Id.*) In response, Plaintiff was advised: "You do not have a[n] as needed pain medication order. You do have an order to receive Naprosyn twice a day on pill call and documentation shows that you refused your medication for that shift." (*Id.* at 6.)

Plaintiff argues that he did not refuse his morning and evening anti-seizure medication, but only the pain medication because he was observing Ramadan. (ECF No. 94-2 at 182-83, ECF No. 94-3 at 15-16.)  He states that he later needed Gregersen to provide the medicine, and he was in such pain that he was willing to break his fast. (ECF No. 94-2 at 183, ECF No. 94-3 at 16.)

In his declaration, Plaintiff states that he was fasting for Ramadan when he refused his morning dosage of the prescribed *pain medication*, because the sun was up and he was not in pain at the time Gregersen offered it. (ECF No. 94-2 at 112.) He notified Gregersen later that he wanted to receive his nightly dosage of *pain medication*, and he claims she refused to give it to him. (*Id.* ¶ 4.)

In Defendants' reply, Gregersen argues that the documentary evidence belies Plaintiff's self-supporting declaration. (ECF No. 112 at 9.)

Gregersen claims that Plaintiff received his *anti-seizure medication*, and that the progress notes from that date do not reflect complaints of extreme pain. Plaintiff's claim, however, is that Gregersen denied him his *pain medication* that day, and maintains that he did suffer in extreme pain. As such, there is a genuine dispute of material fact concerning whether Gregersen denied Plaintiff his pain medication and whether he suffered in pain as a result. Therefore, summary judgment should be denied as to Gregersen in Count X.

**K. Count XI-Eighth Amendment Deliberate Indifference-Gregersen**

Plaintiff alleges that Gregersen denied Plaintiff his seizure medication on August 6, 2014, which resulted in him having a seizure and suffering injuries.

Gregersen argues that Plaintiff received both doses of his seizure medication on that date. (ECF No. 85-4 at 3.)

In his declaration, Plaintiff states that on August 6, 2014, Gregersen denied him his prescribed anti-seizure medication (Dilantin) because he had filed a grievance against her regarding the denial of pain medication on July 22, 2014. (ECF No. 94-2 at 115-116 ¶ 2.) He claims he had an overnight seizure as a result, and injured himself when he fell from the bed with no guardrail, and suffered a laceration over his left eye which required stitches. (*Id*. ¶ 3.)

In the reply brief, Gregersen again argues that the documentary evidence belies Plaintiff's self-serving claim that he was refused his medication. (ECF No. 112 at 9.)

Plaintiff's statements, even though self-serving, create a genuine dispute of material fact as to whether Gregersen denied Plaintiff his anti-seizure medication on August 6, 2014, and whether he suffered a seizure as a result. Therefore, summary judgment should be denied as to this claim against Gregersen.

**L. Foster**

Foster is only named in the Eighth Amendment conditions of confinement claim in Count VIII on a supervisory liability basis. The other defendants named in that claim did not move for summary judgment. Foster provides a declaration that she has not worked at ESP since June 1997. (Foster Decl., ECF No. 84-26.)

Plaintiff argues that Foster was the Deputy Director of NDOC and had authority of operations throughout NDOC, including at ESP. (ECF No. 94-2 at 184.) He further argues that she was responsible for prisoners' inmate grievances. (*Id*.)

Plaintiff provides no actual evidence to support his assertion that Foster, as the Deputy Director of NDOC, had actual notice of specific factual claims asserted in Count VIII. Therefore, summary judgment should be granted in Foster's favor in Count VIII.

**M. Judicial Notice**

At the end of the more than 400 pages of documents filed by Plaintiff in response to Defendants' motion is a document titled "Judicial Notice to the Court." (ECF No. 94-2 at 167-169.) This was also docketed separately as a motion. (ECF No. 96.)

Plaintiff asks the court to take judicial notice of case 2:15-cv-00560-MMD-NJK, which includes allegations of excessive force. Plaintiff does not state, however, what in the record in that case he seeks to have the court take judicial notice of, or how it is relevant to *this* case. Therefore, that motion should be denied.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **DENYING** Plaintiff's request for a stay under Rule 56(d), and **DENYING** his request for judicial notice.

**IT IS HEREBY FURTHER RECOMMENDED** that the District Judge enter an order **GRANTING IN PART AND DENYING IN PART** Defendants' Partial Motion for Summary Judgment (ECF No. 84). Specifically, the court recommends that the motion be:

(1) **DENIED** as to the retaliation claim in Count I;

(2) **DENIED** as to the Eighth Amendment deliberate indifference claim in Count I as to Dr. Koehn and Lyons, but **GRANTED** as to Dawn Jones and Dr. Aranas;

(3) **DENIED** as to the retaliation claim in Count II;

(4) **DENIED** as to the First Amendment and RLUIPA claims in Count II;

(5) **GRANTED** as to the Eighth Amendment claims in Count III;

(6) **GRANTED** as to the retaliation and access to courts claims against Cox in Count V;

(7) **DENIED** as to the retaliation claim against Cox in Count VII;

(8) **DENIED** as to the Eighth Amendment deliberate indifference claim against Cox, Varady and Crowder in Count VII;

(9) **GRANTED** as to the Eighth Amendment conditions of confinement claim against Dawn Jones in Count IX, but **DENIED** insofar as that claim is asserted against Dr. Koehn, Lyons, Dr. Aranas, Baker, Fletcher and Byrne;

(10) **DENIED** as to the retaliation claim against Fletcher and Baker in Count IX;

(11) **DENIED** as to the Eighth Amendment claim against Gregersen in Count X;

(12) **DENIED** as to the Eighth Amendment claim against Gregersen in Count XI; and

(13) **GRANTED** as to the Eighth Amendment conditions of confinement claim asserted against Foster in Count VIII.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED:  November 17, 2017.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE