UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JAMAL DAMON HENDRIX,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF NEVADA, *et al.*,<br><br>Defendants. | Case No. 3:15-cv-00155-MMD-WGC<br><br>**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Am. Compl., ECF No. 13.) The events giving rise to his action took place while he was housed at Ely State Prison (ESP). (*Id*.)

On November 17, 2017, the undersigned issued a report and recommendation that Defendants partial motion for summary judgment be granted in part and denied in part. (ECF No. 118.) Objections were filed by Plaintiff as well as Defendants. (ECF Nos. 121, 125.)

On March 2, 2018, District Judge Miranda M. Du entered an order adopting and accepting the report and recommendation. (ECF No. 131.) The same day, District Judge Du entered an order referring this case to the undersigned for a settlement conference. (ECF No. 132.) She further ordered that the joint pretrial order would be due within thirty days of the date the settlement conference was held (if the settlement conference was unsuccessful). (*Id.)*

Pursuant to District Judge Du's order, on March 7, 2018, the undersigned entered an order scheduling the settlement conference for Tuesday, May 1, 2018, at 9:00 a.m. (ECF No. 133.) The

parties were ordered to submit confidential settlement conference statements for in camera review no later than 12:00 p.m., on Tuesday, April 24, 2018. Defendants timely submitted a very comprehensive, confidential settlement conference statement. No settlement conference statement was submitted by Plaintiff.

Deputy Attorney General Erin Albright, Warm Springs Correctional Center Warden Russell Perry, and Nevada State Tort Claims Manager Nancy Katafias, all traveled to Reno, Nevada, and appeared for the settlement conference on May 1, 2018. Shortly before the settlement conference was set to commence, the court was advised that Plaintiff refused to participate. ESP Correctional Sergeant James Lester was sworn as a witness and testified telephonically on the record that Plaintiff refused to appear for the court-ordered settlement conference.

The undersigned stated on the record that an order to show cause (OSC) would issue requiring Plaintiff to explain why his failure to submit a confidential settlement conference statement and participate in the court-ordered settlement conference should not result in the imposition of sanctions, including the possible dismissal of this action. (Minutes at ECF No. 134.) The court also vacated the deadline to submit the joint pretrial order pending resolution of the OSC. (*Id*.) The OSC issued on May 2, 2018. (ECF No. 135.)

Plaintiff filed a response to the OSC on May 18, 2018. (ECF No. 136.) Plaintiff advanced three reasons for his failure to appear and failure to submit a settlement conference statement: (1) prior to the scheduled video conference, he was placed in a holding cell with unsanitary conditions; (2) privacy and confidentiality concerns, i.e., that the room where the video conference would be held was not sound proof, and was across the hall from Sergeant Lester's office, as well as correctional officers milling about; and (3) that in March 2018, he was denied the transaction forms utilized to send legal mail (commonly referred to as "brass slips").

Defendants filed a brief responding to Plaintiff's arguments. (ECF Nos. 139, 139-1 to 139-10.)

The court held a hearing on the OSC on June 25, 2018, where Plaintiff appeared telephonically, and Erin Albright, Esq., appeared for Defendants.

///

## II. DISCUSSION

**A. Factual Findings**

Plaintiff acknowledged, both in his response to the OSC, and at the hearing, that District Judge Du ordered the parties to participate in a settlement conference, and that the undersigned entered an order scheduling the settlement conference for May 1, 2018, and required the parties to submit confidential settlement conference statements for in camera review no later than April 24, 2018, at 12:00 p.m. (*See* ECF No. 136 at 1-2.)

On March 8, 2018, Plaintiff was initially given a memorandum that he would be having a telephonic conference in this case, but this was replaced by a memorandum issued the following day advising that it would be a video conference, and would take place in the ESP Video Court Room on May 1, 2018. (*See* ECF Nos. 136 at 2, 14, 15; ECF Nos. 139-1, 139-2.) Plaintiff signed the memorandum indicating that he would attend the video conference on May 1, 2018, in the ESP Video Court Room. (ECF No. 136 at 15; ECF No. 139-2.)

On April 16, 2018, Plaintiff had a telephonic conference with Ms. Albright. (ECF No. 136 at 2-3; ECF No. 139-3; Albright Decl., ECF No. 139-4 ¶ 2.) Plaintiff conveyed to Ms. Albright that there was no point in continuing settlement discussions, and that the case should proceed to trial. (Albright Decl., ECF No. 139-4 ¶ 2.) Ms. Albright advised Plaintiff he could file a motion to vacate the settlement conference if he did not wish to participate. (Albright Decl., ECF No. 139-4 ¶ 2.) Plaintiff then stated that he wished to discuss settlement, but he was not prepared at that point, and the call should be rescheduled. (Albright Decl., ECF No. 139-4 ¶ 2.) The parties agreed to reschedule the call for April 19, 2018, but Ms. Albright had to cancel the call due to a scheduling conflict. (Albright Decl., ECF No. 139-4 ¶ 3; ECF No. 139-5.)

On May 1, 2018, Plaintiff was escorted from his housing unit to a holding cell by Correctional Officers Hinkle and McArdle. Sergeant Lester's office is located in the hallway. (ECF No. 136 at 4, 18-19 ¶ 3.) Plaintiff claims that the holding cell in which he was placed was unsanitary (smelled of urine, there was vomit in the sink, and the toilet was clogged with feces). (*Id.*)

///

1    Defendants submit the declaration of Sergeant Lester, who states that the holding cell did
2 not have feces in a clogged toilet, did not smell of urine, did not have vomit in the sink and was
3 not unsanitary when Plaintiff was placed there. (Lester Decl., ECF No. 139-6 ¶ 5.)
4    At the hearing, Plaintiff contested whether Sergeant Lester had seen the condition of the
5 holding cell.
6    There is a dispute about the condition of the holding cell in which Plaintiff was placed prior
7 to the scheduled video settlement conference; however, the court finds Plaintiff less than credible
8 on this issue. The court asked Plaintiff at the hearing why he did not then go to the video conference
9 room to advise the court of the conditions, and Plaintiff never offered an explanation. If the
10 conditions in the holding cell were truly as bad as Plaintiff described them, it seems he would have
11 wanted to get out of that room, and he could have taken that opportunity to alert the court to the
12 conditions (and to his concerns about confidentiality of the video conference). Instead, Plaintiff
13 refused to go to the scheduled settlement conference.
14    Plaintiff acknowledged in his briefing and at the hearing that he refused to attend the
15 scheduled settlement conference via video on May 1, 2018. Sergeant Lester testified to this on the
16 record on the date the settlement conference was to take place, and confirms this fact in his
17 declaration. (Lester Decl., ECF No. 139-6 ¶ 6.) Plaintiff claims the refused to attend because he
18 had concerns about the confidentiality of the proceeding.
19    Regarding the room where the video conference was set to be held, Plaintiff claims that it
20 was not soundproof; Sergeant Lester's office was across the hall and he kept his door open; and
21 there would be officers who would be in the hallway and who could "sit in" on the conversation
22 and observe it from the benches. (ECF No. 136 at 4-5, 19 ¶ 7.) He states that when he was being
23 escorted back to his housing unit, when he was in the hallway, he could hear a conversation of a
24 prisoner who was engaged in a video conference. (ECF No. 136 at 6.)
25    Plaintiff references a "blanket order" entered by United States Magistrate Judge Valerie P.
26 Cooke, in case 3:16-cv-00067-MMD-VPC, concerning the confidentiality of mediation and
27 settlement conference proceedings within ESP. (ECF No. 136 at 5-6, 9.) Plaintiff claims that after
28 he raised his concerns in that case, prisoners were taken to a locked room where officers were not

visible, but monitored from the hallway. (*Id*. at 6.)

Defendants acknowledge that Plaintiff raised the issue of confidentiality of mediation and settlement conference proceedings in February 2017, in case 3:16-cv-00067-MMD-VPC. In that case, the action was set for an Early Mediation Conference (EMC), and the defendants filed an emergency motion to exclude the case from the EMC after Plaintiff had sent counsel a letter indicating he did not wish to participate. (3:16-cv-00067-MMD-VPC, ECF No. 11.) In that letter, Plaintiff stated: I "hate[s] the government and those that work for it, especially those who help correctional officers, I choose not to attend and/or accepted a telephonic conference because of the same reasons Im already suing the defendant." (3:16-cv-00067-MMD-VPC, ECF No. 11-2.) He also stated that he was not concerned about being sanctioned. (*Id*.)

United States Magistrate Judge Valerie P. Cooke set a hearing for January 5, 2017, and Plaintiff refused to appear for that proceeding as well. (3:16-cv-00067-MMD-VPC, ECF No. 13.) The EMC was vacated, and Judge Cooke issued an OSC for sanctions for the failure to appear and comply with a court order, setting a hearing for February 14, 2017. (3:16-cv-00067-MMD-VPC, ECF No. 16.) At the hearing on the OSC, Plaintiff advised Judge Cooke for the first time of his concerns regarding the confidentiality of the proceeding. (ECF No. 3:16-cv-00067-MMD-VPC, ECF No. 20.) Judge Cooke directed defense counsel to confer with the warden regarding safeguards to ensure inmates participating in EMCs or settlement conferences have confidence their privacy would be maintained. (*Id*.) The EMC was rescheduled and Judge Cooke declined to sanction Plaintiff for his failure to appear.

Defense counsel spoke to ESP Warden Filson, and it was determined that the room where the EMC was to occur was not reasonably soundproof, and that he would search for a better room to use for the proceedings. (3:16-cv-00067-MMD-VPC, ECF Nos. 22, 22-1.) In the meantime, ESP staff would be required to wear hearing protection ear muffs while monitoring an inmate during confidential proceedings. (*Id*.)

Defendants submitted documentation concerning the room where the video conference was to take place in this case. (ECF No. 139-7.) It is located diagonally across a twelve-foot wide hallway from the housing sergeant's office. (*Id.*) The housing sergeant's door remains open unless

he is away from his desk. (*Id.*) When the video room is in use, the door is closed and secure. (*Id.*) A correctional officer is posted outside of the closed door. (*Id.*) A correctional officer is only placed inside if an inmate is designated High Risk Potential (HRP) or it is deemed necessary by the associate warden. (*Id.*)

Judge Cooke did not enter a "blanket order" for all EMCs or settlement conferences conducted at ESP, but Warden Filson did represent that the officers would wear ear muffs so that they could not overhear the proceedings. Ms. Albright represented to the court that if Plaintiff would have appeared for the video conference, the officers would have been wearing these ear muffs.

The court asked Plaintiff at the hearing about why he did not appear for the scheduled video conference, if only to alert the court to his confidentiality concerns, and Plaintiff never provided an explanation. When the court pressed Plaintiff on this issue, he even said "I don't know," and "I have my reasons." He never articulated anything specific to support his proffered confidentiality concerns. Instead, he seemed to just rely on his own speculation that officers would be able to overhear his conversations, despite the fact that they were to be wearing protective ear muffs outside of the room (he was apparently not designated HRP, and the associate warden had not otherwise deemed it necessary to have a correctional officer placed inside the room).

If Plaintiff did not wish to participate in the settlement conference either because he simply did not want to proceed, or he had concerns about its confidentiality, he knew that he could have either filed a motion to vacate the conference in advance, or he could have at least appeared on the morning of May 1, 2018, to advise the court of his concerns. In fact, Ms. Albright told him on April 16, 2018, that he could file such a motion if he did not wish to participate. Moreover, he knew that he should have utilized these options instead of simply refusing to appear because he went through a similar scenario with Judge Cooke in 3:16-cv-00067-MMD-VPC, and was admonished for his refusal to appear. Instead, the first time he voiced his concerns over confidentiality of the proceeding was in his response to this court's OSC.

Plaintiff also stated in his response to the OSC that the tort claims manager only wanted Plaintiff to settle debt that he owed to NDOC, and essentially that settlement negotiations would

1  not be fruitful. (ECF No. 136 at 6-7.) He admits that he told Ms. Albright on April 16, 2018, "about
2  the possibility he would not attend on the telephonic conference call which was already too late to
3  notify the court about." (ECF No. 136 at 7:2-3.) Again, it is not clear why it would have been too
4  late to notify the court about his intention not to appear on April 16, 2018, when the settlement
5  conference was scheduled for May 1, 2018. Plaintiff was not required to settle his case, but he was
6  required by court order to participate in the settlement conference; and, if he did not desire to do
7  so, at the very least he could have filed a motion to vacate the conference in advance.

8  Next, Plaintiff contends that his failure to submit a confidential settlement conference
9  statement was due to the denial of his request for brass slips by prison officials between March 9,
10 2018 and March 28, 2018. (ECF No. 136 at 7, 20 ¶ 10.) He contends that he held his food flap (in
11 his cell door) open to get the attention of the supervisor to provide him with the forms, but was
12 unsuccessful. (*Id.*) He claims that he filed an emergency grievance on the issue, and this was denied
13 as well.

14 Defendants have submitted evidence that all requests for pre-paid legal postage submitted
15 by Plaintiff in April 2018 were approved, and all legal mail he submitted during that month was
16 mailed out. (ECF No. 139-10.) In fact, Plaintiff submitted requests for legal postage to send
17 documents to Justice Court, the Attorney General's Office, as well as the Court Clerk at the District
18 Court in April 2018 (albeit not related to this case), and those requests were approved and the mail
19 sent out. (*Id.*)

20 Plaintiff was never able to explain to the court that even if he was denied the forms
21 (commonly referred to as "brass slips") in March of 2018, why he could not obtain a brass slip in
22 April of 2018 to send his legal mail (i.e., the confidential settlement conference statement) prior
23 to the April 24, 2018 deadline for submitting the statements.

24 Ms. Albright represented to the court that if an indigent inmate at NDOC requests legal
25 postage or to have legal mail sent out, those requests are automatically approved, and if Plaintiff
26 had requested legal mil in mid-to-late April, it would have been reflected in his transaction
27 statements.
28 ///

Finally, the court notes that when it advised the parties that it would take the matter under submission and enter an order, Plaintiff became angry, told the court he would appeal the issue anyway and then directed profane insults at the court, and unilaterally terminated the telephone conference.

**B. Sanctions**

Subsection (f) of Rule 16 permits the judge to make "any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii)" if a party or its attorney "fails to appear at a scheduling or other pretrial conference" or "fails to obey a scheduling or other pretrial order." This includes the sanction of dismissal. Fed. R. Civ. P. 37(b)(2)(A)(v).

Local Rule IA 11-8 also allows the court, after providing notice and an opportunity to be heard, to impose "any and all appropriate sanctions on an attorney or party who: (a) Fails to appear when required for pretrial conference, argument no motion or trial …; or (d) Fails to comply with any order of this court."

In addition, the court has the power to sua sponte dismiss an action for failure to prosecute it or comply with court rules or orders. *See* Fed. R. Civ. P. 41(b); *Ash v. Cvetkov*, 739 F.2d 493, 496 (9th Cir. 1984) (citation omitted); *Pearson v. Dennison*, 353 F.2d 24, 28 (9th Cir. 1965) (citation omitted) (acknowledging court had power to dismiss under its local rule). An involuntary dismissal under this rule (unless for lack of jurisdiction, improper venue, or failure to join a party, which are not applicable here) operates as an adjudication on the merits. Fed. R. Civ. P. 41(b).

The Ninth Circuit has upheld sanctions for the failure to appear or timely notify the court and opposing counsel of an intention not to appear for a court-ordered mediation or settlement conference. *See Lucas Automotive Engineering, Inc. v. Bridgestone/Firestone, Inc.*, 275 F.3d 762 (9th Cir. 2001); (affirming sanctions imposed for failure to attend a mediation session when representative asserted that failure to appear was not intentional); *Ayers v. City of Richmond,* 895 F.2d 1267, 1270 (9th Cir. 1990) (affirming sanctions for attorney who failed to appear at scheduled settlement conference); *Thompson v. Housing Authority of the City of Los Angeles*, 782 F.2d 829 (9th Cir. 1986) (citing cases).

In considering whether to dismiss a pro se plaintiff's action under Rule 41(b), the court considers: "(1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Carey v. King*, 856 F.2d 1439, 1440 (9th Cir. 1998).

The first factor is the public interest in expeditious resolution of litigation. Plaintiff's failure to appear for a court-ordered settlement conference has unnecessarily delayed this action. Even if the case had not settled, District Judge Du set forth a deadline for filing a pre-trial order after the settlement conference. That deadline had to be suspended while the court addressed Plaintiff's failure to appear.

Second, the court's need to manage its docket has been thwarted by Plaintiff's failure to appear. *See Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) ("It is incumbent upon the Court to manage its docket without being subject to routine noncompliance of litigants."). "Rule 16, the central pretrial rule, authorizes a court to manage cases so that disposition is expedited, wasteful pretrial activities are discouraged, the quality of the trial is improved, and settlement facilitated." *In re Phenylpopanolamine (PPA) Products Liability Litigation,* 460 F.3d 1217, 1227 (9th Cir. 2006).

The court reiterates that Plaintiff's failure to appear resulted in: the court and defense counsel spending hours preparing for the settlement conference; the travel of defense counsel and its representatives to the courthouse in Reno; the work of court and prison staff to utilize the video conference equipment for the conference; the testimony of Sergeant Lester when Plaintiff failed to appear; the issuance of the OSC; the court and defense counsel's review of Plaintiff's response to the OSC and defense counsel's preparation of a brief responding to Plaintiff's arguments; the court and defense counsel's preparation and attendance at the hearing on the OSC; and, the preparation of this Report and Recommendation. All of this travail could have been avoided had filed a motion to vacate the settlement conference in advance, or if Plaintiff simply appeared for the scheduled video conference, if only to voice his concerns about the proceeding. In conclusion, Plaintiff's refusal to appear undoubtedly took time away from other cases and the management of

- 9 -

the docket.

Third, Defendants risk prejudice the longer this case is carried on because the memories of witnesses will fade and evidence may be lost. Defendants were also prejudiced when they expended efforts preparing to engage in a meaningful discussion to try and resolve this case in advance of trial, and were deprived of that opportunity by Plaintiff.

Fourth, while there is a public policy favoring disposition of cases on their merits which weighs in favor of Plaintiff, this factor does not outweigh the other factors that weigh in favor of dismissal.

Finally, the court does not perceive any other less drastic sanction would be effective. Plaintiff was admonished by another Magistrate Judge for his refusal to appear for a court-ordered mediation instead of voicing his concerns regarding the confidentiality of the proceeding. He was advised by defense counsel that if he did not want to participate, he could file a motion to vacate the settlement conference. Despite knowing that simply refusing to appear was unacceptable, he did not advise the court, defendants, or their representatives prior to the scheduled conference that he did not intend to appear, and valuable time and resources were wasted. While defense counsel spent time preparing a comprehensive settlement conference statement, Plaintiff asserted no credible reason for failing to submit a statement.

Payment of the opposing side's fees and costs expended in preparing for and attending the settlement conference have generally been found to be a sufficient sanction for failing to attend a court-ordered settlement conference. Here, however, Plaintiff is proceeding IFP, and monetary sanctions are not practical.

The court is not aware of any other non-monetary sanction that would adequately address Plaintiff's failure to heed court orders to participate in the alternative dispute resolution process. Other sanctions courts utilize are warnings, formal reprimands, and preclusion of claims or defenses. *See e.g. Malone v. U.S. Postal Service,* 833 F.2d 128 (9th Cir. 1987). Plaintiff's conduct before this court and in 3:16-cv-00067-MMD-VPC makes it clear that a warning or reprimand would not be effective. A sanction precluding a claim would have the same effect as dismissal. Treating the failure to obey the court order as contempt of court (i.e., under Fed. R. Civ. P.

1  37(b)(2)(A)(vii)) is not likely to have much effect on a litigant who is proceeding IFP and is already
2  incarcerated.
3      It would not serve as any type of deterrent, to Plaintiff or others litigating in this court, if
4  the court simply turned a blind-eye to this type of conduct and allowed the Plaintiff to either have
5  another bite at the apple by setting a second court-ordered settlement conference, or simply
6  allowing the case to proceed to trial (which appears to have been his preference all along).
7      In sum, the above-referenced factors weigh in favor of dismissal. Therefore, the court
8  recommends the sanction of dismissal of this action with prejudice for Plaintiff's failure to comply
9  with the court's orders to appear for a settlement conference and submit a confidential settlement
10 conference statement.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **DISMISSING** this action **WITH PREJUDICE**.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: June 27, 2018.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE